Present: Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Koontz, S.J.

CONDOMINIUM SERVICES, INC.

                                              OPINION BY
v.        Record No. 100303        JUSTICE S. BERNARD GOODWYN
                                              April 21, 2011
FIRST OWNERS' ASSOCIATION OF
FORTY SIX HUNDRED CONDOMINIUM, INC.

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Nolan B. Dawkins, Judge

In this appeal, we consider whether the circuit court erred in its interpretation of a management agreement (the Management Agreement) between First Owners' Association of Forty Six Hundred Condominium, Inc. (FOA) and Condominium Services, Inc. (CSI). We also consider whether the circuit court erred in granting summary judgment on FOA's conversion claim, in permitting certain expert testimony into evidence, and in upholding the jury's award of punitive damages.

## I. Background

FOA filed a complaint against CSI in the Circuit Court of the City of Alexandria, alleging that CSI had breached the terms of the Management Agreement and had wrongfully converted FOA's funds. CSI filed a counterclaim and an amended counterclaim for breach of contract. The circuit court sustained FOA's demurrers to the counterclaim and amended counterclaim. FOA's claims proceeded to trial before a jury. The jury returned a verdict in favor of FOA on both claims, and

the circuit court entered judgment in favor of FOA consistent with the jury's verdict.  CSI appeals.

## II. Facts

FOA is a Virginia nonstock corporation that is a condominium unit owners' association under the Virginia Condominium Act, Code § 55-79.39, et seq.  In August 2005, FOA's Board of Directors (the Board), on FOA's behalf, entered into a Management Agreement with CSI for a term of two years from November 1, 2005 to October 31, 2007.  FOA was to pay CSI a monthly fee of $6,075 in exchange for CSI acting as FOA's management agent.  The Management Agreement provided that either party could terminate the Management Agreement without cause upon ninety days written notice, and FOA could terminate the Management Agreement with cause upon thirty days written notice to CSI.

On July 1, 2006, the Board sent CSI a letter constituting thirty days notice of termination for cause effective August 1, 2006.  FOA believed the termination was justified because CSI failed to provide FOA with correct financial documents, failed to file necessary tax returns, failed to pay payroll taxes, and prepared incorrect W-2 forms for FOA's employees.  FOA received notifications from the IRS and the Commonwealth that penalties and interest were being assessed as a result of these failures. FOA retained a certified public accountant, Isaac Reitberger,

2

to prepare and file the various documents that CSI should have filed, and hired a new management agent.

On August 1, 2006, CSI's chief executive officer sent a letter to all of FOA's unit owners directing them to continue sending their assessment payments to CSI.  CSI opened a new bank account, purportedly in FOA's name, in which to keep the assessment money it collected from the unit owners.  CSI opened the account by having its president and controler falsely represent in documents filed with the bank that they were officers of FOA.  FOA did not authorize the opening of the account or have any signatory authority on it.

After August 1, 2006, CSI continued to collect assessment payments due FOA and paid itself a monthly management fee of $6,075 out of funds deposited into the new bank account.  CSI paid itself fees totaling $91,125.[1]  CSI asserts that it was entitled to the management fees because FOA's termination of CSI was in violation of FOA's Bylaws (the Bylaws) which, according to CSI, were incorporated into the Management Agreement and required a vote of the unit owners prior to termination of the Management Agreement.

Section 2 of the Management Agreement states:

The documents governing this relationship consist of this Agreement, the Virginia Condominium Act, the

---

[1] CSI has paid the additional FOA funds it collected to FOA; these funds are not in dispute.

3

Association's Declaration, the Bylaws, Rules and Regulations, and Board of Director Resolutions, including all modifications, amendments, and changes issued subsequent to the execution of this Agreement.

FOA's Bylaws contain various provisions concerning the rights and obligations of FOA's members, FOA's Board and FOA itself. Article I identifies FOA as the "Owners' Association." Article V addresses the formation of FOA's Board and the Board's duties and responsibilities. Section 1 of Article V states that "the affairs of the Owners' Association shall be governed" by the Board, and Section 3 of Article V states that the Board "shall have all the powers and duties necessary for the administration of [FOA's affairs] and the Condominium Project and may do all such acts and things as are not by law or by these By-Laws directed to be exercised and done by the members." Section 4 of Article V of the Bylaws permits the Board to delegate any of its duties, powers or functions to a management agent by written contract.

In support of its position, CSI relies upon Article VIII, Section 2 of the Bylaws, which states:

> The Board of Directors shall employ for the Owners' Association a management organization (the "Management Agent") at a rate of compensation and such other terms and conditions as shall be established by the Board of Directors to perform such duties and services as the Board of Directors shall from time to time authorize in writing, . . . . The Owners' Association shall not change Management Agents or undertake self-management, without the prior affirmative vote of members representing three-fourths (3/4ths) of the votes of

4

the Residential and Commercial Unit owners present at any meeting of the members duly called for such purpose . . . .

On January 5, 2009, FOA initiated this action against CSI. CSI filed its answer to the complaint, raising the affirmative defense that its termination was invalid because, prior to terminating CSI, FOA did not obtain the necessary votes required under Article VIII, Section 2 of the Bylaws, which CSI alleged was incorporated into the Management Agreement. CSI also filed a counterclaim and later an amended counterclaim, alleging that FOA breached the Management Agreement by attempting to terminate CSI without the prior affirmative vote of the unit owners, and that the Management Agreement could never be terminated without such a vote.

FOA filed a demurrer to CSI's counterclaim and to the amended counterclaim, contending that the Management Agreement merely referenced rather than incorporated the Bylaws. Further, it asserted that even if the Bylaws were incorporated into the Management Agreement, the Bylaws did not require a vote of the unit owners for FOA to terminate its Management Agreement with CSI. The circuit court sustained the demurrers and dismissed the amended counterclaim with prejudice.

Prior to trial, FOA filed a motion in limine seeking to exclude any testimony or argument by CSI relating to its affirmative defense that the termination was invalid because

FOA did not obtain the necessary votes of the unit owners allegedly required by Article VIII, Section 2 of the Bylaws. The circuit court granted FOA's motion in limine and excluded CSI's affirmative defense at trial.

In response to CSI's interrogatories concerning expert witnesses, FOA identified Reitberger as an expert witness. FOA, in its interrogatory response, disclosed that Reitberger would opine that the failures of CSI resulted in the underpayment of taxes and that FOA would incur interest and penalties as a result of those failures. It also stated that Reitberger's opinions would be based upon his experience and expertise and his review of relevant documents. It did not state the amount of the interest and penalties Reitberger believed FOA would incur. Reitberger was deposed by CSI approximately six weeks before trial, and he testified regarding the specific amount of the taxes and penalties at issue and the bases for his opinions regarding those amounts.

The Thursday before the Monday trial date, CSI filed a motion in limine to exclude the testimony of Reitberger about the potential tax penalties and interest FOA could face due to CSI's failure to pay certain taxes on FOA's behalf. CSI asserted that the testimony should be excluded because FOA's response to CSI's expert witness interrogatory failed to identify the amount of the penalties and interest claimed and

6

failed to state the basis for any such damages.  The circuit court denied CSI's motion in limine.

The parties then proceeded to a jury trial.  At the conclusion of FOA's case, CSI moved to strike FOA's evidence on three grounds:  (1) Reitberger's testimony on the tax penalties and interest was speculative and not offered to a reasonable degree of accounting certainty; (2) the conversion claim was improper because it arose from the alleged breach of contract and was not an independent tort; and (3) FOA presented insufficient evidence to support a claim for punitive damages.  The circuit court denied the motion as to these grounds.[2]  At the conclusion of all the evidence, CSI renewed its motion to strike on the same grounds.  The circuit court again denied the motion.

At the conclusion of all the evidence, FOA moved for summary judgment on its conversion claim.  The circuit court granted FOA summary judgment on the conversion claim in the amount of $91,125.  On the remaining issues, the jury returned a verdict in favor of FOA.  With respect to the breach of contract claim concerning payroll administration and taxes, the

---

[2] The court granted the motion to strike with regard to damages for health insurance and for failure to file the 2004 Form 941.

7

jury awarded damages in the amount of $70,667. On the conversion claim, the jury awarded prejudgment interest beginning on October 1, 2007 and punitive damages in the amount of $275,000.

CSI filed a motion to strike the jury verdict and for judgment notwithstanding the verdict with regard to punitive damages or, alternatively, for remittitur. The circuit court denied the motion.

### III. Analysis

#### A. FOA's Demurrers and Motion to Strike

CSI argues that the circuit court erred by sustaining FOA's demurrers and motion to strike CSI's affirmative defense. CSI contends that because the Bylaws are one of the documents that governs the relationship established by the Management Agreement, the Bylaws are incorporated into the Management Agreement, giving CSI the right to invoke termination protections it claims are contained in the Bylaws. CSI claims FOA's termination of CSI was invalid because the Bylaws required FOA to obtain the affirmative vote of three-fourths of the unit owners prior to terminating the Management Agreement with CSI. Thus, according to CSI, the circuit court erred by ruling to the contrary and sustaining FOA's demurrers to its counterclaim and amended counterclaim and by striking CSI's claimed affirmative defense.

8

FOA responds that the purpose of the reference to the Bylaws in the Management Agreement was not to incorporate the Bylaws into the Management Agreement so as to confer upon CSI termination rights contrary to those expressly stated in the Management Agreement, but rather to identify documents that CSI must be aware of and comply with in performing its duties. We agree with FOA.

This Court reviews the circuit court's sustaining of a demurrer de novo. Hubbard v. Dresser, Inc., 271 Va. 117, 122, 624 S.E.2d 1, 4 (2006). In reviewing the granting of a motion to strike, "this Court will consider the evidence and all reasonable inferences arising therefrom in the light most favorable to the appellant, resolving any doubt as to the sufficiency of the evidence in favor of the appellant." McGowan v. Lewis, 233 Va. 386, 387, 355 S.E.2d 334, 334 (1987).

Because the Management Agreement references a separate writing, the Bylaws are construed as part of the Management Agreement for the purpose indicated. See W.D. Nelson & Co. v. Taylor Heights Dev. Corp., 207 Va. 386, 391, 150 S.E.2d 142, 146 (1966) ("Writings referred to in a contract are construed as a part of the contract for the purpose and extent indicated."). Section 1 of the Management Agreement appoints CSI as FOA's agent, states that the term of such appointment is two years and specifies the compensation CSI is to receive.

Section 2 of the Management Agreement states that the documents governing the relationship between FOA and CSI consist of the Management Agreement, "the Virginia Condominium Act, the Association's Declaration, the Bylaws, Rules and Regulations, and Board of Directors Resolutions."  Then, in the next section of the Agreement, Section 3, titled "Responsibilities and Duties of the Agent," the Agent acknowledges that it "has read, and is familiar with, the Condominium Act, Declaration, the Bylaws, the Rules and Regulations of the Association, and particularly with the duties and obligations of the Board of the Association."  The Bylaws are not mentioned at any other place in the Management Agreement.  Later in the Management Agreement, in Section 19, there is a separate section titled "Termination," which states that the Management Agreement may be terminated by either party without cause upon ninety days written notice and that FOA can terminate the Management Agreement with cause upon thirty days written notice to CSI.

The express language of the Management Agreement allows FOA to terminate CSI without a vote of FOA's members.  Section 3 is the only section of the Management Agreement other than Section 2 that mentions the Bylaws, and Section 3 concerns "Responsibilities and Duties of the Agent."  When considering the Management Agreement as a whole, it does not appear that the purpose of the reference to the Bylaws was to incorporate

10

the Bylaws into the Management Agreement as they related to the termination of the management agent; the term and method of termination of the management agent is explicitly stated in the Management Agreement without reference to the Bylaws. Instead, the indicated purpose of the reference to the Bylaws and other documents in Section 2 was to identify documents that CSI, as the management agent, needed to be aware of and comply with in performing its duties and responsibilities under the Management Agreement.

To adopt CSI's argument concerning the Management Agreement would render express terms of the Management Agreement meaningless, including the two-year term and termination provisions. Indeed, CSI claimed as part of its damages in its counterclaim that it is entitled to the monthly management fee until the allegedly necessary vote is taken by FOA's members, making the two-year term stated in the Management Agreement meaningless and of no effect.

"[C]ontract language will not be treated as meaningless where it can be given a reasonable meaning." Ross v. Craw, 231 Va. 206, 214, 343 S.E.2d 312, 317 (1986). "When two provisions of a contract seemingly conflict . . . they [should] be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole." Plunkett v. Plunkett, 271 Va. 162, 168, 624 S.E.2d 39, 42 (2006) (quoting

11

Ames v. American Nat'l Bank of Portsmouth, 163 Va. 1, 39, 176 S.E. 204, 217 (1934)). FOA's interpretation of the purpose and intent of Section 2 of the Management Agreement, accepted by the circuit court, harmonizes the reference to the Bylaws with the express terms of the Management Agreement. CSI's interpretation of the Management Agreement, on the other hand, cannot be harmonized with the plain language of the Management Agreement.

Furthermore, a specific provision of a contract governs over one that is more general in nature. Mutual Life Ins. Co. v. Hill, 193 U.S. 551, 558 (1904) ("where there are two clauses in any respect conflicting, that which is specially directed to a particular matter controls in respect thereto over one which is general in its terms"); see also Asphalt Roads & Materials Co. v. Commonwealth, 257 Va. 452, 460, 512 S.E.2d 804, 809 (1999) (Lacy, J., concurring) ("specific section of the contract overrides the more general contract provisions"). The reference to the Bylaws in the Management Agreement is general—the Bylaws "govern" the Management Agreement. On the other hand, the provisions in the Management Agreement regarding the term of the Management Agreement and means of termination are specific. CSI's interpretation would allow the general reference to the Bylaws to control over the specific

12

termination and term provisions, a result that is contrary to principles of contract interpretation.

The circuit court did not err in sustaining FOA's demurrers and striking CSI's affirmative defense. The Management Agreement, although it referenced the Bylaws, did not require a three-fourths vote of the unit owners before FOA could terminate CSI as FOA's management agent.

## B. Conversion

CSI argues that the circuit court erred in denying CSI's motion to strike FOA's conversion claim and in granting FOA summary judgment on its conversion claim. CSI contends that the circuit court should have struck the conversion claim because there was no independent tort of conversion distinct from the contract. Further, CSI asserts that summary judgment on the conversion claim was inappropriate because there was a dispute as to whether CSI had authority to continue to retain its management fees.

FOA responds that its conversion claim was proper because CSI committed a separate, independent tort. According to FOA, CSI's conversion of FOA's funds was distinct from the Management Agreement because it occurred after FOA properly terminated the Management Agreement. FOA contends that summary judgment on its conversion claim was appropriate because FOA presented undisputed evidence that CSI took $91,125 of FOA

13

assessment money after being terminated as FOA's management agent.  We agree with FOA.

To recover for the tort of conversion, "the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract."  Dunn Construction Co. v. Cloney, 278 Va. 260, 267, 682 S.E.2d 943, 946 (2009) (internal quotation marks omitted). "A cause of action for conversion lies independent of an action in contract and may provide a separate basis, distinct from the contract upon which one [party] may sue another."  PGI, Inc. v. Rathe Prods., Inc., 265 Va. 334, 344, 576 S.E.2d 438, 443 (2003).

A claim for conversion requires proof of a "wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession."  Universal C.I.T. Credit Corp. v. Kaplan, 198 Va. 67, 75, 92 S.E.2d 359, 365 (1956) (internal quotation marks omitted).  "Any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights, or inconsistent therewith, may be treated as a conversion."  Id. at 76, 92 S.E.2d at 365 (internal quotation marks omitted).

In support of its conversion claim, FOA provided evidence at trial that the Management Agreement already had been terminated when CSI opened a bank account by falsely

representing authorization from FOA to do so, directed FOA's unit owners to send money owed to FOA to it, and collected money owed to FOA. Cf. Abi-Najm v. Concord Condo., LLC, 280 Va. 350, 363, 699 S.E.2d 483, 490 (2010) (tort alleged by plaintiffs was perpetrated by defendant before a contract between the two parties came into existence, therefore it cannot logically follow that the duty the defendant allegedly breached was one that had its source in the contract). Because the Management Agreement had terminated, CSI's alleged acts did constitute the "independent, willful tort" of conversion, separate from the contract. The circuit court did not err in denying CSI's motion to strike FOA's conversion claim.

Likewise, the circuit court did not err in granting FOA's motion for summary judgment on its conversion claim. Summary judgment is only available when there are no material facts genuinely in dispute. Fultz v. Delhaize Am., Inc., 278 Va. 84, 88, 677 S.E.2d 272, 274 (2009). Summary judgment is not appropriate if reasonable persons may draw different conclusions from the evidence. Id. Where there is no evidence to submit to a jury on an affirmative defense, and the evidence otherwise entitles a plaintiff to relief, summary judgment is appropriate. See Whitt v. Godwin, 205 Va. 797, 802, 139 S.E.2d 841, 845 (1965).

The only defense CSI asserted to FOA's conversion claim was that the Board's termination of CSI was improper because the Board did not first obtain a vote of FOA's unit owners. The circuit court struck that defense. At trial, CSI did not present any evidence that created a question of fact concerning the proper termination of the Management Agreement by FOA. The evidence was undisputed that CSI took $91,125 of FOA's assessment money after being terminated and did not repay that money to FOA. In light of this undisputed evidence and the proper denial of CSI's defense of improper termination, there was no basis upon which the jury could have found in favor of CSI. The circuit court did not err in granting summary judgment on FOA's conversion claim.

### C. Expert Witness Designation

CSI argues that the circuit court erred in permitting FOA's expert to testify regarding amounts of tax-related damages. CSI contends that FOA's interrogatory answer regarding the proposed expert testimony concerning tax penalties and interest was inadequate.

FOA responds that its expert designation was sufficient and complied with Rule 4:1(b)(4). FOA contends that the fact that the designation did not contain the precise amounts of penalties and interest does not make the designation deficient because the types of damages were clearly disclosed.

16

This Court reviews a trial court's decision to admit or exclude expert testimony under an abuse of discretion standard. John Crane, Inc. v. Jones, 274 Va. 581, 591, 650 S.E.2d 851, 856 (2007); Blue Ridge Serv. Corp. v. Saxon Shoes, Inc., 271 Va. 206, 212, 624 S.E.2d 55, 58 (2006) (citing Tarmac Mid-Atlantic, Inc. v. Smiley Block Co., 250 Va. 161, 166, 458 S.E.2d 462, 465 (1995)). This Court must give deference to a trial court's ruling to exclude or admit expert testimony and that ruling will not be disturbed on appeal unless it is plainly wrong and amounts to an abuse of discretion. See Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009).

Rule 4:1(b)(4)(A)(i) requires a party, when asked in an interrogatory, to identify its trial experts and "to state the subject matter on which the expert is expected to testify, and to state the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each opinion." When applying Rule 4:1(b)(4)(A)(i), this Court begins by "determining whether the opinion at issue was disclosed in any form." John Crane, Inc., 274 Va. at 591, 650 S.E.2d at 856.

FOA's expert designation for Reitberger, its accounting expert, stated:

> Mr. Reitberger will opine that the failures of CSI resulted in the underpayment of taxes and that the Association will now incur interest and penalties as a result of the failures of CSI as well as expenses in the form of fees paid to Mr. Reitberger's firm to correct the errors of CSI and to resolve the claims of the IRS and the Commonwealth of Virginia. . . .
>
> Mr. Reitberger's opinions are based upon his experience and expertise, his review of correspondence between the IRS and the Commonwealth of Virginia and the Association, his review of W-2s, general ledgers, and other financial documents of the Association relating to payroll withholdings and payment of payroll taxes.

Although FOA did not itemize the specific amounts of penalties and interest, the interrogatory response disclosed that it was Reitberger's opinion that CSI's failures resulted in underpayment of taxes and FOA incurring interest and penalties. It was within the discretion of the circuit court to determine whether the interrogatory response sufficiently disclosed the subject matter on which Reitberger was going to testify, the substance of Reitberger's opinions and a summary of the grounds for Reitberger's opinions. Compare John Crane, Inc., 274 Va. at 592-93, 650 S.E.2d at 856-57 (expert designations were insufficient because opinion was not disclosed in any form). There is evidence to support the circuit court's determination that FOA's designation was sufficient to satisfy the purpose of Rule 4:1(b)(4)(A)(i), which is to "allow the litigants to discover the expert witnesses' opinions in preparation for trial." Woodbury v. Courtney, 239 Va. 651, 654, 391 S.E.2d

18

293, 295 (1990).  The circuit court did not abuse its discretion in finding the expert designation sufficient and permitting Reitberger to testify.

### D.  Expert Witness Testimony on Damages

CSI argues that the circuit court erred in denying CSI's motion to strike FOA's claim for certain tax penalties and interest damages because Reitberger's testimony regarding those matters was speculative and did not meet the standard of "reasonable certainty."  Specifically, CSI alleges that the penalties related to its failure to file W-2 forms had been assessed but had not been paid by FOA and might be reduced.  CSI also asserts that testimony regarding the claimed tax penalties and interest for failure to file the last quarter 2005 and the first quarter 2006 federal Form 941 and payroll tax withholdings was speculative because, as of the date of the trial, no assessment had been made by the IRS for those liabilities.

FOA responds that it proved its tax-related damages with reasonable certainty.  Reitberger unequivocally testified concerning the penalties and interest the IRS had already assessed.  He also testified that under applicable IRS regulations, FOA is now liable for and will be assessed additional specific interest and penalties.

FOA, as the plaintiff below, bore the "burden of proving with reasonable certainty the amount of damages and the cause

19

from which they resulted; speculation and conjecture cannot form the basis of the recovery." Shepherd v. Davis, 265 Va. 108, 125, 574 S.E.2d 514, 524 (2003) (quoting Carr v. Citizens Bank & Trust Co., 228 Va. 644, 652, 325 S.E.2d 86, 90 (1985)); see also SunTrust Bank v. Farrar, 277 Va. 546, 555, 675 S.E.2d 187, 191 (2009) ("damage calculations based on unsupported projections are improper"). "[E]xpert testimony . . . cannot be speculative or founded upon assumptions that have an insufficient factual basis." Blue Ridge Serv. Corp., 271 Va. at 213, 624 S.E.2d at 59 (quoting Tittsworth v. Robinson, 252 Va. 151, 154, 475 S.E.2d 261, 263 (1996)).

In the context of a breach of contract, a plaintiff need not establish the specific amount of the loss or damage with absolute certainty. When it is "certain that substantial damage has been caused by the breach of a contract, and the uncertainty is not whether there have been damages, but only an uncertainty as to their true amount, then there can rarely be any good reason for refusing all damages due to the breach merely because of that uncertainty." E.I. DuPont de Nemours & Co. v. Universal Moulded Prods. Corp., 191 Va. 525, 570, 62 S.E.2d 233, 254 (1950) (internal quotation marks omitted). "Proof of absolute certainty as to the amount of loss or damage is not essential when the existence of loss is established and the facts and circumstances proven are such as to permit of intelligent and

probable estimate of the amount of damage or loss sustained."
Id. at 572-73, 62 S.E.2d at 255.

It is undisputed that CSI, while serving as FOA's management agent, failed to file necessary tax returns and to pay payroll taxes and prepared incorrect W-2 forms. Reitberger was qualified to testify as an expert on payroll administration and taxes. Reitberger calculated the amounts of the tax deposits required and the timing for filing the returns. He then used statutory rates for tax liability to determine what the penalties for failure to timely file the appropriate forms were.

Reitberger's testimony regarding damages included the IRS's penalty assessment of $27,553 for CSI's failure to file W-2s, although FOA had not paid the assessment. However, a party that has incurred an obligation to pay a debt as a result of the wrongful or unlawful conduct of another, but that has not yet made payment on such debt, has suffered an actual loss. Sykes v. Brown, 156 Va. 881, 887, 159 S.E. 202, 204 (1931) ("Payment of the expense of treatment is not essential to a recovery. If plaintiff is liable for the debt incurred, that is all that is necessary."); see also Virginia Farm Bureau Mut. Ins. Co. v. Hodges, 238 Va. 692, 696, 385 S.E.2d 612, 614 (1989) ("An expense can only be 'incurred' . . . when one has paid it or become legally obligated to pay it."). FOA was legally

obligated to pay this assessment from the IRS. Although the possibility of abatement by the IRS prevented FOA from establishing the amount of the tax penalty with absolute certainty, the assessment from the IRS provides "reasonable certainty" as to the amount of that tax penalty and constitutes an "intelligent and probable estimate of the amount of damage or loss sustained." See E.I. DuPont de Nemours, 191 Va. at 572-73, 62 S.E.2d at 255.

The IRS has not assessed the claimed tax penalties and interest for CSI's failure to file the last quarter 2005 and first quarter 2006 federal Form 941 and to pay payroll tax withholdings. "Where the wrongful act of the defendant is of such a nature as to constitute an entire breach of the contract, compensation therefor may be recovered at once for the whole loss." James v. Kibler, 94 Va. 165, 173, 26 S.E.2d 417, 418 (1896). Future damages are recoverable if they can be ascertained with certainty. Id. Reitberger's testimony satisfies the standard of reasonable certainty. Although the IRS had not yet issued an assessment for FOA's failure to file Form 941 and to pay payroll tax withholdings, Reitberger's estimates of those assessments were based on mandatory IRS guidelines and his experience and expertise concerning such matters. They constitute intelligent and probable estimates of the penalties the IRS will assess.

The circuit court did not err in denying CSI's motion to strike damages concerning the disputed tax penalties and interest. There was evidence to support those damages in that FOA was already legally obligated to pay them or Reitberger established the amount of damages with reasonable certainty using calculations that were based upon statutory rates of tax liability.

### E. Punitive Damages

CSI argues that the circuit court erred in denying CSI's motions to strike punitive damages. CSI contends that FOA presented no evidence of actual malice or evil intent.

FOA responds that the jury's award of punitive damages was supported by the evidence and should not be disturbed on appeal. FOA contends that the evidence presented at trial plainly established CSI's conscious disregard of FOA's rights.

"Punitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others." Giant of Virginia, Inc. v. Pigg, 207 Va. 679, 685, 152 S.E.2d 271, 277 (1967); see also Banks v. Mario Indus. of Virginia, Inc., 274 Va. 438, 460, 650 S.E.2d 687, 699 (2007). A trial court may only set aside a jury verdict if it is plainly wrong or without evidence to support it. Bussey v. E.S.C. Rests. Inc., 270 Va. 531, 534, 620 S.E.2d 764, 766 (2005).

23

CSI argues that even if its interpretation of the Management Agreement was wrong, a mistake is not a sufficient basis to infer "evil intent" and award punitive damages. See Pigg, 207 Va. at 686, 152 S.E.2d at 277 ("Evil intent cannot be presumed or inferred from mere mistake."). The evidence presented at trial, however, provided many examples of how CSI's actions exhibited a conscious disregard of FOA's rights. These actions include CSI opening a bank account four days after the effective date of its termination and failing to provide FOA with signatory authority on that account. Furthermore, to open the bank account, CSI officers made knowing misrepresentations that they were officers of FOA. CSI held FOA assessments in the account for more than a year and paid itself $91,125 in monthly management fees out of those funds between August 2006 and October 2007. CSI acknowledged that it was experiencing financial difficulties and could not meet its financial obligations without the management fees it paid itself from FOA funds. Despite becoming aware in 2008 that the circuit court, in a prior action brought by a company affiliated with CSI,[3] disagreed with CSI's stated interpretation of the Management

---

[3] In a prior proceeding, Gordon Properties, LLC, a company affiliated with CSI, filed an action against FOA, contesting the termination of CSI as a violation of the Bylaws, which Gordon Properties alleged were incorporated into the Management Agreement. The circuit court disagreed that the Management

Agreement, CSI knowingly and intentionally continued to withhold FOA's $91,125.

The evidence of CSI's "conscious disregard of FOA's rights" was before the jury. The trial court must accord the jury verdict the "utmost deference." Bussey, 270 Va. at 534, 620 S.E.2d at 766. It cannot be said that the jury's verdict was plainly wrong or without evidence to support it. Consequently, the circuit court did not err in denying CSI's motion to strike punitive damages.

## F.  Remittitur

Alternatively, CSI contends that the circuit court abused its discretion in not ordering a remittitur of the verdict. CSI contends that the award of $275,000 in punitive damages shocked the conscience, was in excess of what was expected as punishment, and was oppressive.

FOA responds that the circuit court did not err in denying CSI's motion for remittitur. FOA contends that the jury's award of punitive damages was neither excessive nor disproportionate.

This Court reviews the remittitur of punitive damage awards de novo upon independent review of the record, giving substantial weight to the trial court's action. Baldwin v. McConnell, 273 Va. 650, 656, 643 S.E.2d 703, 706 (2007).

---

Agreement incorporated the Bylaws and entered summary judgment against Gordon Properties.

"Review of the amount of punitive damages includes consideration of reasonableness between the damages sustained and the amount of the award and the measurement of punishment required, whether the award will amount to a double recovery, the proportionality between the compensatory and punitive damages, and the ability of the defendant to pay." Poulston v. Rock, 251 Va. 254, 263, 467 S.E.2d 479, 484 (1996) (citations omitted). Remittitur should be awarded when "the verdict is so excessive as to shock the conscience of the court and to create the impression that the jury has been influenced by passion, corruption or prejudice." Smithey v. Sinclair Refining Co., 203 Va. 142, 146, 122 S.E.2d 872, 875-76 (1961).

In the instant case, the factors this Court must consider weigh in favor of affirming the circuit court's decision not to order remittitur. First, the punitive award of $275,000 was approximately two and a half times the compensatory award for conversion of $91,125, plus $11,390 in prejudgment interest. This ratio is not disproportionate. See Poulston, 251 Va. at 263, 467 S.E.2d at 484 (upholding punitive damages that were 2.5 times greater than compensatory damages); Philip Morris, Inc. v. Emerson, 235 Va. 380, 414, 368 S.E.2d 268, 287 (1988) (affirming punitive damages that were 6.6 times the compensatory award). The amount of the damages award is not so excessive as to shock the conscience of the court, nor does it appear that the jury

26

was influenced by passion, corruption or prejudice.  Similarly, the award of punitive damages does not provide double recovery because the compensatory and punitive damages serve different purposes.  The punitive damages serve as a deterrent to ensure that CSI does not wrongfully convert other associations' money in the future.  Finally, although CSI contends that it was experiencing financial difficulties, CSI did not introduce evidence of their financial situation at trial.  Therefore, CSI cannot prevail before this Court on its claim that the amount of punitive damages would be oppressive.  Given these factors, the circuit court did not err in refusing to order remittitur of the punitive damages award.

## IV. Conclusion

Accordingly, for the reasons stated, we will affirm the circuit court's judgment.

<u>Affirmed.</u>

27