PRESENT:  All the Justices

VICTORIA COALSON

                                              OPINION BY
v.  Record No. 130837            JUSTICE S. BERNARD GOODWYN
                                         February 27, 2014
VICTOR CANCHOLA


          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                    Bruce D. White, Judge

     In this appeal, we consider whether the circuit court erred

in remitting a jury's award of punitive damages.

                            Background

     On March 1, 2011, Victoria Coalson (Coalson) and Michael

Stemke (Stemke) each filed lawsuits in the Circuit Court of

Fairfax County against Victor Canchola (Canchola) seeking

compensatory and punitive damages for personal injuries

sustained in an automobile accident.  The circuit court

consolidated Coalson's and Stemke's actions.

     At the conclusion of the trial, the jury awarded Coalson

$5,600 in compensatory damages and $100,000 in punitive damages

against Canchola.  Stemke received $14,000 in compensatory

damages and $100,000 in punitive damages.  The circuit court

entered a final order on January 11, 2013, but the court

suspended the order for fourteen days to give the parties an

opportunity to file post-trial motions and submit an amended

final order if they wished.  Canchola filed a post-trial motion

for remittitur of both punitive damages awards, arguing that the

awards were excessive under Virginia law and the Due Process Clause of the Fourteenth Amendment.

The circuit court found that Canchola's conduct was egregious. Nevertheless, it noted "a significant disparity" between the plaintiffs' compensatory damages awards, although both punitive damages awards were the same. Based on this disparity, it concluded that Coalson's award was arbitrarily made. The circuit court remitted Coalson's punitive damages to $50,000. While it recognized that "[t]here is no bright line or formula to be applied[,]" the court reduced the award to "less than a ten percent ratio."

The circuit court entered an order granting Canchola's motion for remittitur regarding Coalson's punitive damages award on February 8, 2013. On February 28, 2013, the court entered an amended final order reflecting its remittitur ruling, noting Coalson's acceptance under protest, summarizing the proceedings, denying Coalson's motion to reconsider and awarding post-judgment interest. Coalson filed a notice of appeal with the circuit court on March 21, 2013.[1]

---

[1] Rule 5:9(a) states that a party must file her notice of appeal within 30 days of entry of the trial court's final order. Rule 5:5(b) provides for an extension of time to file a notice of appeal if the trial court "modifie[s]" its final order. The rule also states that "the time for filing the notice of appeal shall be computed from the date of final judgment entered following such modification." Rule 5:5(b). The circuit court's February 8, 2013 order granting Canchola's motion for remittitur

2

Facts

At approximately 6:30 p.m. on February 15, 2009, Canchola was driving and talking on his cellular telephone when he attempted to turn left at an intersection on Waxpool Road in Loudoun County.  He turned in front of a vehicle driven by Coalson, who had the right of way and was unable to stop before colliding with the passenger door of Canchola's vehicle. Coalson and her passenger, Stemke, suffered minor injuries.

Canchola, who was intoxicated at the time of the accident, had an extensive record of driving while intoxicated.  Between 1991 and 1997, Canchola was convicted six times of driving while intoxicated and once of driving with a suspended license.  In 1996, his driver's license was revoked.  In 2004, he was convicted yet again of driving while intoxicated in California.

The night before the accident, Canchola stayed at a hotel in Ashburn, Virginia, with his girlfriend Lori Rudegeair (Rudegeair), who was visiting from Pennsylvania.  At brunch in Alexandria on the day of the accident, Canchola drank several

modified the original judgment and tolled the thirty-day time limit, but it was not a final order because Coalson could still exercise her right to accept remittitur under protest pursuant to Code § 8.01-383.1.  See Ragan v. Woodcroft Village Apartments, 255 Va. 322, 327, 497 S.E.2d 740, 743 (1998) (defining "final order or judgment" as "one that disposes of the whole subject of the case and gives all relief contemplated"). On February 28 the circuit court entered an amended final judgment noting Coalson's acceptance under protest, and Coalson filed her notice within thirty days of the February 28 order, making her notice timely.

glasses of champagne. Afterward, Canchola and Rudegeair walked to a nearby pub, and Canchola drank two rounds of his favorite drink combination, a vodka martini and light beer. They left the pub sometime after 3:30 p.m. when a police officer called Canchola to inform him that a vehicle Canchola had reported missing was located in Leesburg, Virginia. Because Canchola slurred his speech while speaking to the police officer, the officer advised Canchola not to drive when he came to pick up the vehicle.

Despite the warning, Canchola drove Rudegeair's car to Leesburg. He stopped approximately a block from where he was supposed to meet the officer and had Rudegeair drive the rest of the way. After Canchola finished speaking to the officer and claiming the vehicle, which was found in good condition, and after having been warned by the officer not to drive, Canchola left the scene as Rudegeair's passenger. They drove a short distance, waited for a few minutes and returned to Canchola's vehicle after the police officer left. Canchola then drove his vehicle to another bar. Rudegeair followed in her car. There, Canchola drank at least two rounds of the vodka and light beer combination and three additional shots of liquor within a short period of time.

Canchola and Rudegeair left the bar to return to the hotel in separate vehicles. As Canchola approached the intersection

4

where he was to turn left into the hotel entrance, he began a conversation on his cellular telephone. He was engaged in that conversation when he turned left in front of the vehicle driven by Coalson. According to uncontradicted testimony of an expert toxicologist, Canchola's blood alcohol content was almost twice the legal limit at the time of the accident.

After Coalson collided with Canchola, Canchola removed his vehicle from the scene of the accident, parked it and left in Rudegeair's vehicle. He was subsequently arrested upon returning to the hotel. Canchola urged Rudegeair not to tell anyone that he had been driving his vehicle when the accident occurred. Rudegeair initially lied to police but later told the truth under oath.

## Analysis

Coalson argues that the circuit court erred in remitting her punitive damages award because the circuit court's decision was based upon comparing her punitive damages award to Stemke's punitive damages award and upon the proportionality of her punitive damages award in relation to her compensatory damages award. Coalson asserts that proportionality is not the only consideration in determining the excessiveness of punitive damages under Virginia law and that a higher ratio between compensatory and punitive damages was proper in this case due to "the egregiousness of [Canchola's] conduct and the potential

5

harm that could have resulted from his actions." Coalson emphasizes that neither this Court nor the United States Supreme Court has created a "bright-line test." Although she does not base her appeal on constitutional grounds, Coalson maintains that Virginia's remittitur analysis for punitive damages is "framed in, and derived from" federal constitutional law. Consequently, she urges the Court to consider "potential harm" as well as actual harm in reinstating the jury's punitive damages award.

Canchola contends that the circuit court properly considered and applied all of the remittitur factors and constitutional guidelines before granting his motion. He disputes Coalson's assertion that the Court should consider "hypothetical damages" she could have sustained. He argues that considering what could have happened is not supported by this Court's jurisprudence and would require a jury to engage in improper speculation. Canchola claims that in evaluating the reprehensibility of his actions, the proper focus should be on his conduct at the time of the accident, not on "every unsavory act [he] committed over time." According to Canchola, Coalson places too much emphasis on punishment and reprehensibility and ignores proportionality.

"The purpose of punitive damages is to provide 'protection of the public, . . . punishment to [the] defendant, and . . . a

6

warning and example to deter him and others from committing like offenses.'" Huffman v. Love, 245 Va. 311, 315, 427 S.E.2d 357, 361 (1993) (quoting Baker v. Marcus, 201 Va. 905, 909, 114 S.E.2d 617, 620 (1960)). This Court has observed that punitive damages are meant to warn, not to compensate the plaintiff. Doe v. Isaacs, 265 Va. 531, 539, 579 S.E.2d 174, 179 (2003). A punitive damages award is generally left to the jury's discretion because there is no set standard for determining the amount of punitive damages. Worrie v. Boze, 198 Va. 533, 544, 95 S.E.2d 192, 201 (1956).

To justify remittitur, a jury's award must be so excessive that it shocks the conscience of the trial court, indicating that the jury's decision was motivated by "passion, corruption or prejudice." Condominium Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc., 281 Va. 561, 580, 709 S.E.2d 163, 175 (2011) (quoting Smithey v. Sinclair Refining Co., 203 Va. 142, 146, 122 S.E.2d 872, 875-76 (1961)). When a trial court considers whether to remit a jury's punitive damages award, its review of the punitive damages award should consider the "reasonableness between the damages sustained and the amount of the award and the measurement of punishment required, whether the award will amount to a double recovery, the proportionality between the compensatory and punitive damages, and the ability

of the defendant to pay." Poulston v. Rock, 251 Va. 254, 263, 467 S.E.2d 479, 484 (1996) (citations omitted).

In evaluating whether punitive damages were properly remitted, this Court performs a de novo review, examines the record independently and gives "substantial weight" to the trial court's action. Baldwin v. McConnell, 273 Va. 650, 657, 643 S.E.2d 703, 706 (2007) (quoting Poulston, 251 Va. at 263, 467 S.E.2d at 484).

The circuit court reduced the amount of Coalson's punitive damages award because the jury awarded the same amount in punitive damages to Coalson as it did to Stemke despite their different compensatory damages awards. Also, the circuit court ruled that the 1:17.86 ratio between Coalson's compensatory and punitive damages was too high.

We have not previously addressed whether it is proper to compare punitive damages awards in evaluating excessiveness. However, in Allied Concrete Co. v. Lester, 285 Va. 295, 312, 736 S.E.2d 699, 708 (2013), this Court held that a trial court may not compare verdicts to evaluate the excessiveness of compensatory damages. Likewise, in John Crane, Inc. v. Jones, 274 Va. 581, 595, 650 S.E.2d 851, 858 (2007), the Court declined to compare verdicts in determining whether compensatory damages were excessive.

We hold that the same rationale stated in John Crane, Inc. is true regarding comparing punitive damages awards: "[Comparing verdicts] is not probative of whether a verdict is excessive; rather that determination must be made based on the facts and circumstances of each case." Id. The circuit court's consideration of Coalson's and Stemke's relative ratios of compensatory damages to punitive damages as a basis for granting remittitur was error. See Allied Concrete Co., 285 Va. at 312, 736 S.E.2d at 708.[2]

We agree with the circuit court that Canchola's conduct was egregious. Canchola was driving while intoxicated and without a license, which had been revoked because of previous instances of driving while intoxicated. Despite having at least seven convictions for driving while intoxicated on his record, Canchola drove on several occasions on the day of the accident while drinking alcohol throughout the day. He ignored a police officer's warning not to drive and engaged in deception so that the officer would not discover he was driving, after which he drank even more and then attempted to drive again. After causing an accident that could have resulted in serious

---

[2] We note that federal courts sometimes compare verdicts to evaluate whether punitive damages are excessive as a matter of federal constitutional law. See, e.g., Saunders v. Branch Banking & Trust Co. of Va., 526 F.3d 142, 154 (4th Cir. 2008) (comparing punitive damages awards in other Fair Credit Reporting Act cases).

injuries, Canchola fled the scene and asked his girlfriend to lie about his involvement.

The jury was instructed that it could award Coalson damages to compensate her for her injuries, including bodily injuries, pain and mental anguish, inconvenience and medical expenses. The court further instructed the jury that if it awarded Coalson compensatory damages, it could also award punitive damages if it found that Canchola "acted under circumstances amounting to a willful and wanton disregard for the plaintiffs' rights." The punitive damages instruction clearly stated that the purpose of punitive damages was to punish Canchola and to "prevent others from acting in a similar way."

Coalson's punitive damages are reasonably related to her actual damages and to the degree of necessary punishment, which in this case is great. See Philip Morris Inc. v. Emerson, 235 Va. 380, 414, 368 S.E.2d 268, 287 (1988). "Given the clear determination of the basis for each award and the ample evidence supporting each award, our independent review of the record does not suggest double recovery in this case." Baldwin, 273 Va. at 659, 643 S.E.2d at 707. The ratio of Coalson's compensatory damages to punitive damages awarded by the jury is 1:17.86. This is high, but given the reprehensible and dangerous nature of Canchola's conduct, it is not "unreasonable or strikingly out of proportion." Id.; Poulston, 251 Va. at 263, 467 S.E.2d at

10

484. The court expressly stated that the parties did not present evidence on Canchola's ability to pay.[3] See Condominium Servs., 281 Va. at 581, 709 S.E.2d at 175 ("[A defendant who has failed to present evidence of his ability to pay at trial] cannot prevail before this Court on [his] claim that the amount of punitive damages would be oppressive.").

Canchola's conduct was egregious enough to warrant a punitive damages award, and the amount of punitive damages awarded by the jury does not shock the Court's conscience. Virginia precedent indicates that the circuit court should not have remitted the punitive damages award.

It is not clear from the record whether the circuit court granted Canchola's motion for remittitur on state law or federal constitutional law grounds. Thus, we will analyze the award considering relevant federal constitutional law as well.

The United States Supreme Court has prescribed three guidelines for appellate courts to use in reviewing whether punitive damages are so excessive as to violate a defendant's right to due process: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive

---

[3] Canchola acknowledged the same in his motion for remittitur and during oral argument before the circuit court.

damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418 (2003). The Supreme Court has further provided factors for evaluating the first guideline, which is the most important of the three:

> [W]hether[] the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

Id. at 419.

These considerations weigh against remittitur on due process grounds. Virginia certainly has an interest in promoting public safety through prevention and deterrence of driving while intoxicated. See BMW of North America, Inc. v. Gore, 517 U.S. 559, 568 (1996) ("[T]he federal excessiveness inquiry appropriately begins with an identification of the state interests that a punitive award is designed to serve."). Although the collision was an accident, Canchola deliberately chose to drive while severely intoxicated, which resulted in physical injury. Canchola's determined persistence to drive while intoxicated and his reckless disregard for the safety of others is evidenced by his seven prior driving while intoxicated convictions and by his behavior on the day of the accident. See id. at 576-77 ("[E]vidence that a defendant has repeatedly

12

engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law.").  Furthermore, a defendant's conduct that endangers many is more reprehensible than conduct that only endangers a few.  Philip Morris USA v. Williams, 549 U.S. 346, 357 (2007).  Canchola puts other drivers at risk every time he drinks and drives.

The Supreme Court has repeatedly stated that ratios between actual or potential harm and punitive damages should generally be within single digits to satisfy due process requirements. State Farm, 538 U.S. at 425.  Nevertheless, it has also recognized that higher ratios may be constitutional where a defendant's actions are exceptionally reprehensible but result in small economic damage.  See id. (reaffirming that there are no "rigid benchmarks" and indicating that courts should consider each case "based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff"); see also Saunders, 526 F.3d at 154 (citing federal appellate court decisions upholding higher ratios).  Driving while intoxicated could result in death, and it was fortunate that Coalson and Stemke suffered relatively minor injuries.  "While the circuit court observed what it took to be a significant disparity between the punitive award and the compensatory award, that

contrast 'dissipates when one considers the potential loss to [Coalson] . . . .'" TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 449-51, 462 (1993) (upholding a ratio of 1:526).

In upholding a ratio of 1:80 in Saunders, the Fourth Circuit observed that rigidly adhering to a single digit ratio in all cases could sometimes prevent punitive damages from fulfilling their purposes of punishment and deterrence. 526 F.3d at 154. For this reason, the court determined that remitting the punitive damages award in that case "would leave little deterrent or punitive effect." Id. The 1:17.86 ratio in this case is not excessive, for Canchola has demonstrated a need for stronger medicine to cure his disrespect for the law.

Additionally, a comparison of criminal and civil penalties for habitually driving while intoxicated and for driving with a revoked license supports the jury's punitive damages award. The Commonwealth punishes repeated instances of driving while intoxicated by increasing fines and mandatory sentences. See Code §§ 18.2-266 and -270. In addition to the statutory scheme for punishing driving while intoxicated, the legislature has prescribed punishments for habitual offenders in the form of license revocation, mandatory safety courses and increasing penalties for driving without a license. See, e.g., Code §§ 46.2-389 (mandatory revocation of license upon conviction of driving while intoxicated); 46.2-355.1 (mandatory participation

14

in safety course upon second offense of driving with revoked license); 46.2-391 (mandatory three-year revocation for multiple convictions of driving while intoxicated); see also § 46.2-357 (minimum one year and maximum five years' imprisonment for felony offense of driving with revoked license while intoxicated). These penalties demonstrate the seriousness with which Virginia views the act of driving while intoxicated with a suspended or revoked license. See State Farm, 538 U.S. at 428 (noting that criminal penalties are less useful for determining the precise amount of a punitive damages award). Upon consideration of the constitutional guidelines provided by the United States Supreme Court, we conclude that the jury's punitive damages award is not excessive under the Due Process Clause of the Fourteenth Amendment.

Conclusion

Therefore, we hold that the circuit court erred in granting Canchola's motion for remittitur because Coalson's punitive damages award was not excessive under Virginia law nor did it offend Canchola's due process rights. Accordingly, the judgment of the circuit court will be reversed, the jury verdict awarding Coalson $100,000 in punitive damages will be reinstated, and final judgment will be entered on the verdict.

Reversed and final judgment.

JUSTICE McCLANAHAN, dissenting.

The jury awarded Coalson $100,000 in punitive damages, which was nearly 18 times the amount of her compensatory damage award of $5,600.  I would affirm the judgment of the circuit court ordering remittitur of a portion of the punitive damages and reducing the award to $50,000, still almost 9 times the amount of compensatory damages.

While not expressly overruling this Court's precedent, the majority opinion makes clear that the "reasonableness between the damages sustained and the amount of the award" as well as "the proportionality between the compensatory and punitive damages," Baldwin v. McConnell, 273 Va. 650, 658, 643 S.E.2d 703, 706 (2007), are hardly relevant to the circuit court's consideration of whether to remit a portion of a punitive damages award. What is also clear is that the majority affords little weight to the circuit court's action, rather than the "substantial weight" the circuit court is due.  Id. at 657, 643 S.E.2d at 707 (quoting Poulston v. Rock, 251 Va. 254, 263, 467 S.E.2d 479, 484 (1996)).

Following this Court's previous directives, the circuit court employed the proper analysis in considering Canchola's motion for remittitur.  In reaching its decision, the circuit court explained,

> I did take into consideration the Virginia
> Supreme Court factors; reasonableness
> between the damages sustained and the
> amount of the award, the measurement of
> punishment required, whether the award will
> amount to a double recovery, the
> proportionality between the compensatory
> and punitive damages, and the ability of
> the Defendant to pay, such that there is
> any evidence on those items for me.

These are precisely the factors this Court has repeatedly instructed circuit courts to consider. See Baldwin, 273 Va. at 658, 643 S.E.2d at 707 (judicial review upon motion for remittitur "requires" consideration of the following: 1. reasonableness between damages sustained and amount of award; 2. measurement of punishment required; 3. whether award will amount to double recovery; 4. proportionality between the compensatory and punitive damages; and 5. ability of defendant to pay); see also Condominium Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc., 281 Va. 561, 580, 709 S.E.2d 163, 175 (2011); Poulston, 251 Va. at 263, 467 S.E.2d at 484.

Upon consideration of these factors, the circuit court concluded the punitive damages award to Coalson was excessive in relation to her compensatory damages. Finding the award "arbitrary," the court noted it was "troubling to [it] that there is a significant disparity between the compensatory damage award for one Plaintiff, and the compensatory damage award for

17

the other Plaintiff," while the "punitive damage award, in each of the cases, is one hundred thousand dollars."  Furthermore, "considering the proportionality between the compensatory and the punitive damage award[ ]" to Coalson, the circuit court found the almost 1-to-18 ratio disproportionate and excessive, particularly in light of the 1-to-7 ratio the compensatory damages bore to the punitive damages in the verdict for Stemke.[1]

The amount of the circuit court's remittitur was certainly consistent with prior precedent.  This Court has found a proportionality of punitive damages 2.5 times the compensatory damages an acceptable ratio, Poulston, 251 Va. at 263, 467 S.E.2d at 484; Condominium Servs., Inc., 281 Va. at 580, 709 S.E.2d at 175, as well as a proportionality of punitive damages approximately 6.6 and 6.7 times the compensatory damages, Philip Morris, Inc. v. Emerson, 235 Va. 380, 414, 368 S.E.2d 268, 287 (1988).  In Stemke's case, the punitive damages awarded were approximately 7 times his compensatory damages, which the circuit court found reasonable.  In light of the ratios of punitive to compensatory damage awards previously found acceptable by this Court and the ratio found acceptable by the circuit court in Stemke's case, which involved the same accident and conduct of the defendant, I believe the circuit court

---

[1] While the circuit court found Coalson's award excessive, it denied the motion for remittitur of Stemke's award.

18

properly ordered the remittitur of a portion of Coalson's punitive damages and reduction of her award from an amount that was nearly 18 times her compensatory damages to an amount that was nearly 9 times her compensatory damages.

I disagree that it was error for the circuit court to consider the punitive and compensatory damages awarded to Stemke in determining the reasonableness between the damages sustained by Coalson and the amount of her punitive damage award.  The compensatory damages awarded to Stemke were 2.5 times more than the compensatory damages awarded to Coalson, yet, as the circuit court observed, the punitive damages awarded to each were the same, leading the circuit court to conclude the amount of punitive damages awarded to Coalson was arbitrary rather than bearing a reasonable relation to the compensatory damages and the punishment required.  See Stubbs v. Cowden, 179 Va. 190, 201, 18 S.E.2d 275, 280 (1942)("The damages awarded should bear some reasonable proportion to the real damages sustained and to the measure of punishment required; otherwise, they indicate prejudice or partiality.").[2]  As compared to Stemke's punitive damage verdict, which was a little over 7 times the compensatory

_____

[2] The requirement that the punitive damages bear a reasonable relationship to the actual damages has led this Court to remand an award of punitive damages to the circuit court for reconsideration when it has reversed a portion of the compensatory damages.  Little v. Cooke, 274 Va. 697, 719, 652 S.E.2d 129, 142 (2007).

19

damage verdict, the jury verdict for Coalson against the same defendant for the same conduct amounted to nearly 18 times the verdict. In other words, the jury punished Canchola more severely for the injuries sustained by Coalson than for the injuries sustained by Stemke arising from the same accident. If not arbitrary, the award was based on partiality toward Coalson or prejudice against Canchola.

This Court's prior holdings that prohibit the comparison of jury verdicts awarding compensatory damages are not applicable. In John Crane, Inc. v. Jones, 274 Va. 581, 595, 650 S.E.2d 851, 858 (2007) and Rose v. Jaques, 268 Va. 137, 159, 597 S.E.2d 64, 77 (2004), this Court rejected the "average verdict rule," which compares statewide or nationwide jury verdicts to reach an "average verdict," because such a rule is not relevant to the extent of actual pain and suffering experienced by the plaintiff. In Allied Concrete Co. v. Lester, 285 Va. 295, 312, 736 S.E.2d 699, 708 (2013), the Court relied upon its holdings in John Crane and Rose to conclude that it was error for the trial court to compare injuries suffered by the plaintiffs.[3] However, the rationale that a verdict for one person's pain and suffering is not a reasonable basis on which to judge the

---

[3] As I stated in Allied Concrete, 285 Va. at 316 n.3, 736 S.E.2d at 710 n.3 (McClanahan, J., concurring in part and dissenting in part), I did not agree that the trial court in that case engaged in improper verdict comparison.

20

excessiveness of a verdict for another person's pain and suffering can only apply when the issue involves the excessiveness of a compensatory damage award. Ignoring the rationale of these holdings, the majority has adopted a bright-line rule forbidding any comparison of verdicts, even when such a comparison is actually probative of the analysis and dictated by reason.

Indeed, our own Court compares ratios found acceptable in other cases that involve not only different plaintiffs, but also different defendants, different conduct, and different types of actions entirely. See Baldwin, 273 Va. at 659, 643 S.E.2d at 707 (noting the punitive damage award approved in Poulston was two and one-half times the compensatory award); Condominium Servs., Inc., 281 Va. at 581, 709 S.E.2d at 175 (noting the punitive damage award in Poulston of 2.5 times the compensatory award and a punitive damage award in Philip Morris of 6.6 times the compensatory award). In this case involving a single automobile accident and a consolidated trial, the circuit court compared the ratios as between two injured plaintiffs against one defendant who caused their injuries. Arguably, then, the circuit court's comparison of the verdicts in this case was more probative to the issue of reasonableness and proportionality, than the comparisons this Court has made to ratios in unrelated cases.

Presumably, we will "'give substantial weight to the trial court's action and affirm it, unless, from our view of the record, the trial court acted improperly.'" Baldwin, 273 Va. at 657, 643 S.E.2d at 706 (quoting Poulston, 251 Va. at 263, 467 S.E.2d at 484). Nevertheless, despite the circuit court's faithful application of the law and the obvious disparity of ratios of compensatory to punitive damages between the Coalson and Stemke awards, each of which were based on the same conduct of Canchola, the majority finds the circuit court's action improper. In Allied Concrete, 285 Va. at 317, 736 S.E.2d at 711, I expressed my belief that "for all practical purposes the last nail in the coffin of remittitur [of compensatory damages] has been driven." It appears that remittitur of punitive damages has suffered the same fate.