COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Chaney and Lorish
Argued by videoconference


JAMES CARLTON VAUGHAN, JR.

                                              MEMORANDUM OPINION* BY
v.       Record No. 0777-22-2                 JUDGE LISA M. LORISH
                                              FEBRUARY 28, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Steven C. McCallum, Judge

Danny Zemel (The Krudys Law Firm, PLC, on briefs), for appellant.

Justin B. Hill, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


James Carlton Vaughan, Jr. was convicted of two counts of distribution of a controlled

substance following a bench trial.  He appeals, arguing that the evidence was insufficient to prove

he was the drug dealer at the controlled buys.  Vaughan also argues that the trial court erred in

finding him ineligible for the safety-valve provision of Code § 18.2-248(C)(a)-(e).  We disagree and

affirm the convictions.

BACKGROUND[1]

Vaughan's convictions followed two controlled purchases where Austin Scruggs, a

confidential informant for the Chesterfield County Police Department, was the buyer.  Scruggs

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)).  We "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

originally met Vaughan, who he knew as "Broadrock," through Facebook and usually arranged to purchase drugs from him by telephone. Scruggs, a long-time drug user, testified that he had purchased drugs from Vaughan "[t]oo many [times] to count." He first saved Vaughan's telephone number in his phone about a year before the first controlled purchase, and he testified that he could recognize Vaughan's voice on the phone.

Before the first controlled buy, Chesterfield County Police Detective G.M. Hopkins got Vaughan's phone number from Scruggs and used law enforcement databases to connect that phone number with an address on Cullen Road. Detective Hopkins went to Cullen Road and saw a maroon Nissan Murano parked outside the residence. The license plate from the SUV was registered to the address at Cullen Road.

Scruggs and Vaughan planned to meet at a street corner near Scruggs's residence for the exchange. Fifteen minutes before the meeting, Detective Jared Slusser saw the maroon car on Cullen Road leave the residence, but he could not identify the driver.

Before Scruggs met Vaughan, Detective Hopkins did a full body search of Scruggs to check for any illegal contraband or money. Finding none, Detective Hopkins gave Scruggs two hundred dollars and a recording device. Scruggs then walked up the street to the predetermined meeting location out of Detective Hopkins's sight and into Detective Jonathan Lombardo's view.

Detective Lombardo testified that from his position, he was able to view the entire interaction during the controlled buy. He observed Scruggs reach the location and wait. Minutes later, "a dark colored SUV arrive[d]." Scruggs walked to the SUV, entered the front passenger seat, and exited less than a minute later. Detective Lombardo saw Scruggs walk toward Detective Hopkins's vehicle.

Scruggs testified that he waited at the predetermined location until Vaughan arrived in a vehicle. He entered the vehicle and gave Vaughan money in exchange for a bag of drugs. Scruggs said he exited the vehicle and went straight to Detective Hopkins.

Scruggs then gave Detective Hopkins a plastic bag that contained a tan powder substance. Detective Hopkins searched Scruggs again and found no other drugs or money. Testing later concluded that the bag contained 1.07 grams of heroin and fentanyl.

A week later, Scruggs, outside the presence of detectives, called Vaughan again and asked how much heroin he could buy for two hundred dollars. Scruggs and Vaughan planned to meet in the same location where they had conducted the last drug buy. Scruggs again met with Detective Hopkins before going to meet Vaughan. Again, Detective Hopkins searched Scruggs and, after finding no illegal drugs or money, gave Scruggs two hundred dollars and a recording device. While Scruggs was with Detective Hopkins, the number Scruggs associated with Vaughan called and the caller stated that "he was ready to go."

As before, Scruggs walked out of Detective Hopkins's sight and into Detective Lombardo's area of surveillance. Scruggs testified that the same vehicle approached him. He leaned into the vehicle and gave Vaughan two hundred dollars. Vaughan then gave him drugs. After the exchange Scruggs walked back to Detective Hopkins. Detective Lombardo confirmed that he saw "a dark colored SUV, appearing to be the same make and model as the previous buy [arrive]," and that after Scruggs leaned into the driver's window for several seconds he turned and walked toward Detective Hopkins. The vehicle made a U-turn and left the neighborhood. When Scruggs reached Detective Hopkins, he turned over another bag filled with brown powder later confirmed to contain 2.225 grams of heroin.

Days later, in an unrelated incident, Detective Slusser saw Vaughan driving the maroon vehicle he saw during his surveillance on Cullen Road before the first controlled buy.

At trial, on direct examination, Scruggs admitted that he had four felony convictions, a misdemeanor conviction for embezzlement, and that he had a pending case before the Chesterfield Circuit Court. Scruggs explained that he became a confidential source for the Chesterfield Police Department in 2020 after he was hospitalized for a drug overdose. Scruggs admitted that he agreed to become a confidential source because he believed he would receive a lighter sentence on his pending charges, but he emphasized that no deals had been made about his pending case in Chesterfield.

The Commonwealth, without objection, entered prior sentencing orders for Vaughan showing two prior convictions for possession of cocaine with intent to distribute. At the close of the Commonwealth's evidence, Vaughan moved to strike the evidence. The trial court denied the motion. Vaughan renewed his motion to strike in his closing arguments.

The court found that the video and audio of the two drug transactions were of "no evidentiary value" because the viewer "cannot see anything about who the drug seller is" nor "hear a voice that's recognizable as anyone's except Mr. Scruggs." Acknowledging that Scruggs had criminal convictions and that he had pending charges on the dates of the controlled buys as well as pending charges as of the day of trial, the court found him to be credible. The court noted that Scruggs was a "habitual drug user" with a "longtime relationship with his drug seller," having purchased drugs from Vaughan "too many times to count." Moreover, Vaughan's phone number was saved in Scruggs's phone for about a year before the two controlled buys. Although Scruggs knew Vaughan by his street name Broadrock, Scruggs identified Vaughan in court as his longtime drug dealer.

The court also noted that Scruggs's identification was corroborated by the history of the maroon Nissan Murano SUV. The court found that this Nissan was the vehicle that Vaughan drove to both controlled buys. The vehicle was registered to the residence associated with Vaughan, and

the police saw Vaughan with the vehicle just days after the last controlled buy. The trial court denied the motion to strike and convicted Vaughan of both offenses.

At sentencing, Vaughan argued that he qualified for the safety-valve provisions in Code § 18.2-248(C)(a)-(e) and therefore should not be subject to the mandatory minimum sentencing provisions. Concluding it could not decide the safety-valve issue at that time, the court sua sponte continued the sentencing hearing and invited counsel to brief the matter.

At the next hearing, the parties agreed the only issue before the court was whether Vaughan met the requirement in Code § 18.2-248(C)(e). Vaughan argued that he provided the name of his supplier for both transactions and that he told Detective Hopkins that the supplier's information would be found on his phone. He argued this information was all he needed to provide to qualify for the safety-valve provision.

Detective Hopkins testified that he talked with Vaughan three times. The only information Vaughan provided in these meetings was to give the street name of the individual he said he got the drugs from for the controlled buys. He did not provide a physical description of the person or any other information. Vaughan's counsel emailed Detective Hopkins additional information including a legal name as well as a nickname of Vaughan's supplier and suggested that the supplier's phone number was in Vaughan's phone. The email also contained a second legal name and nickname of another alleged drug dealer. Detective Hopkins said Vaughan never provided information about how he acquired the drugs that were sold on the dates of the controlled buys.

The court found that the "sum and substance" of what Vaughan provided law enforcement was "certain names, nicknames, street names, spelling unknown in most cases." The trial court also looked to Vaughan's version of the incident in the presentencing report where Vaughan stated that the informant was lying, that he did not know the witness, and that he was not a drug dealer. Given his version of events, the court found that he could not find truthful Vaughan's provision of names

to Detective Hopkins. The court also explained that the names were not "accompanied by any physical description, vehicle somebody drives, where the person generally is found or hangs out or how Mr. Vaughan communicates with them." Because there was additional information reasonably known to Vaughan other than the names alone, "which [could not] even be dispelled with any exactitude," the trial court found that Vaughan had not met his burden to show, by the preponderance of the evidence, that he had truthfully provided the Commonwealth with all information and evidence about the offenses. Thus the court rejected Vaughan's request to be sentenced under the safety-valve provision. Vaughan appeals.

I.

STANDARD OF REVIEW

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "[T]he relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

ANALYSIS

Vaughan asserts that the evidence was insufficient to identify him as the individual who sold the drugs during the controlled buys. He argues that Scruggs's testimony was uncorroborated and inherently incredible because he was a convicted felon who admitted he performed the controlled buys to avoid potential charges. Vaughan also points to the fact that Scruggs did not know his legal name and only identified him as his dealer after being shown a single photograph.[2] Finally,

---

[2] Vaughan has not raised any due process challenge to this identification.

Vaughan argues that Scruggs failed to provide specific answers to the Commonwealth's open-ended questions, responding only to leading questions.

Our deference to the fact finder on witness credibility is well-established. "The sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts lies with the fact finder." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). The only time we disturb "[t]he conclusions of the fact finder on issues of witness credibility" is "when we find that the witness' testimony was 'inherently incredible, or so contrary to human experience as to render it unworthy of belief.'" *Ashby v. Commonwealth*, 33 Va. App. 540, 548 (2000) (quoting *Fisher v. Commonwealth*, 228 Va. 296, 299-300 (1984)).

"A legal determination that a witness is inherently incredible is very different from the mere identification of inconsistencies in a witness' testimony or statements." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Id.* "To be 'incredible,' testimony 'must be either so manifestly false that reasonable men ought not to believe it, or it must be shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006) (quoting *Cardwell v. Commonwealth*, 209 Va. 412, 414 (1968)).

Vaughan argues that Scruggs's testimony is inherently incredible because he is a convicted felon and faces possible other charges. The court considered but rejected Vaughan's argument. The court directly acknowledged that Scruggs was a felon and that he had been convicted for a crime of moral turpitude. And the court noted that Scruggs had pending charges when he was a confidential informant as well as at the time of trial. Yet the court found Scruggs to be credible. The court reasoned that Scruggs was a long-time drug user who bought drugs

from Vaughan "too many times to count." Scruggs also had his drug dealer's nickname and phone number saved in his phone for a year before the controlled buys took place. And the court found Scruggs's testimony corroborated by the detectives' independent observations about the Nissan Murano. The record supports the trial court's credibility determination, and we will not disturb that finding on appeal. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that appellant was guilty of two counts of distribution of a Schedule I/II controlled substance, third or subsequent offense.

## II.

## STANDARD OF REVIEW

We review sentencing decisions for abuse of discretion. *Commonwealth v. Greer*, 63 Va. App. 561, 567 (2014). When those decisions "involve the interpretation of a statute or the common law, such an interpretation is a question of law reviewed *de novo* on appeal." *Id.* at 568; *see Hall v. Commonwealth*, 296 Va. 577, 582 (2018) (reviewing de novo the construction of statute in sentencing context). To the extent there are factual determinations the trial court made, we view these "in the light most favorable to the Commonwealth," *Sandidge v. Commonwealth*, 67 Va. App. 150, 156 (2016), and "review the trial court's factual findings only to determine if they are plainly wrong or devoid of supporting evidence," *Campbell v. Commonwealth*, 39 Va. App. 180, 186 (2002).

## ANALYSIS

Vaughan argues that he qualified for the safety-valve provision in Code § 18.2-248(C) and that it was error for the court to conclude otherwise. In particular, he asserts that the trial court erred by relying on statements he made to the probation officer about the offense in determining whether he was eligible. Vaughan argues that while he was still protesting his innocence at the time of the

interview, he later provided truthful and complete information about the offense before sentencing, which is all that Code § 18.2-248(C) requires. He also asserts that the court improperly relied on Detective Hopkins's testimony that law enforcement could not benefit from the information he provided.

Vaughan was convicted of two counts under Code § 18.2-248(A), and he was subject to significant mandatory minimums because of his prior convictions. At the same time, the statute allows certain eligible defendants to avoid the mandatory minimum sentences. Code § 18.2-248(C). Here, only the fifth requirement of the safety-valve provision was contested:

> Not later than the time of the sentencing hearing, the person has truthfully provided to the Commonwealth all information and evidence the person has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the person has no relevant or useful other information to provide or that the Commonwealth already is aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

Code § 18.2-248(C)(e). The questions for this Court are whether the trial court correctly interpreted this provision and did not plainly err in its factual findings that Vaughan was untruthful and provided incomplete information to law enforcement.

"'[T]he burden of production and persuasion' in establishing the factual predicates that provide potential relief from the mandatory minimum sentence under Code § 18.2-248(C) 'falls on the defendant seeking to invoke [this] safety-valve provision.'" *Stone v. Commonwealth*, 297 Va. 100, 101 (2019) (second alteration in original) (quoting *Hall*, 296 Va. at 586). The appellant must prove these factual predicates by a preponderance of the evidence. *Id.*

We agree with Vaughan that under Code § 18.2-248(C), a defendant may provide "all information and evidence the person has concerning the offense or offenses" up until the time of sentencing and that the information disclosed need not be useful to law enforcement. Had the trial court found that Vaughan's later disclosures were "all [the] information and evidence"

available to him but denied him safety-valve relief for either of these reasons, Vaughan would be on stronger footing. But the court expressly found that the information Vaughan provided was incomplete.

Vaughan gave several names to Detective Hopkins, which were transmitted to Richmond City police, but nothing more. The court found that "in no case [were] these names accompanied by any physical description, vehicle somebody drives, where the person generally is found or hangs out or how Mr. Vaughan communicates with them." The court reasoned that Vaughan had additional information that he would reasonably know other than names "which [could not] be dispelled with any exactitude." Given the record here, we cannot say the trial court's determination that Vaughan did not provide law enforcement with complete information is plainly wrong.

Thus, we conclude that Vaughan failed to carry his burden under Code § 18.2-248(C)(e) to prove by a preponderance of the evidence that he "truthfully provided to the Commonwealth all information and evidence the person has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."

CONCLUSION

The evidence was sufficient to convict Vaughan of two counts of distribution of a Schedule I/II controlled substance. And the trial court did not abuse its discretion when it rejected Vaughan's request that the court apply Code § 18.2-248(C)'s safety-valve provision to his convictions on these offenses. Accordingly, we affirm his convictions.

*Affirmed*.