COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Kelsey, Beales and Decker
Argued at Chesapeake, Virginia

COMMONWEALTH OF VIRGINIA

v.        Record No. 1898-13-1

RAYSHAWN TORRELL GREER

OPINION BY
JUDGE MARLA GRAFF DECKER
JULY 22, 2014

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Timothy S. Fisher, Judge

Katherine Quinlan Adelfio, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellant.

Jeffrey C. Rountree for appellee.


Rayshawn Torrell Greer (the defendant) was convicted in a jury trial of possessing a

firearm after having been convicted of a violent felony pursuant to Code § 18.2-308.2.  As

permitted by Code § 19.2-398(C), the Commonwealth appeals the defendant's sentence for that

offense.[1]  It contends that the trial court erred by sentencing the defendant to a term of

imprisonment of two years rather than the five-year mandatory minimum sentence.  The trial

court imposed that sentence after the jury returned a sentencing verdict of two years, despite

written and oral instructions properly advising the jury that the only statutorily available sentence

for the crime was a mandatory term of imprisonment of five years.  The Commonwealth further

argues that the trial court was required to set aside the jury's erroneous sentencing verdict and

impanel a new jury to sentence the defendant in accordance with the law.  We hold that the trial

court's imposition of a jury sentence below the mandatory minimum sentence of five years was

---

[1] The defendant did not file a cross-appeal and does not challenge his conviction or his
two-year sentence.

void *ab initio*. Additionally, we hold that the trial court erred in refusing to impanel a new jury for sentencing after the original jury refused to perform its duties as instructed. Therefore, we reverse in part, vacate the defendant's sentence, and remand to the trial court for sentencing before a new jury.

## I. BACKGROUND

The defendant requested a jury trial after being charged with the offense of possession of a firearm by a convicted felon. At trial, the Commonwealth's evidence established that police came into contact with the defendant when he voluntarily agreed to speak with them during the course of a murder investigation. The defendant admitted to detectives that he possessed a firearm during the time period in which he shot and killed Frank Griffin. The defendant cooperated with law enforcement and turned the gun over to them. He admitted that he had previously been convicted of a felony and knew that he was not supposed to have a gun.[2] Ultimately, the prosecutor concluded that the defendant acted in self-defense when Griffin brandished his own firearm. As a result, the defendant was not charged with murder.

At the defendant's trial on the firearm offense, the jury found him guilty of possession of a firearm by a convicted violent felon.[3]

In the sentencing phase of trial that immediately followed the determination of guilt, the court instructed the jury as follows:

> You have found the defendant guilty of the crime of possessing or transporting a firearm after having been convicted of a violent felony.

---

[2] In 2008, the defendant was convicted of robbery in violation of Code § 18.2-58.

[3] The record shows that the jury found that the defendant's prior felony conviction was for an offense classified as "violent" under the applicable law, the classification that subjected him to the mandatory minimum sentence of five years. On appeal, the defendant does not challenge the fact-finding process that led to this classification.

Upon consideration of all the evidence you have heard, you shall fix the defendant's punishment at a specific term of imprisonment of five (5) years.

During deliberations, the jury submitted the following handwritten question: "Is the 5 years the only option?" The trial court consulted with counsel and provided the following written response: "The answer is *yes*." The jury then further inquired in writing, "What if we do not all agree to the fix [sic] punishment of 5 years?" In response, the court brought the jury back and reminded them that their verdict had to be unanimous and if they could "possibly reach a verdict, it [was] [their] duty to do so."

After additional deliberations, the jury submitted the following questions:

We can not [sic] all agree on 5 years but we agree on 2 years.

Do we have any other options or do we sit here till we agree on 5 years[?]

Is this the minimal sentance [sic] for this crime[?]

The court discussed the questions with counsel and observed, "[I]f the verdict is not unanimous, then the [c]ourt impanels another jury for sentencing. If the verdicts are unanimous, then it's over." The court referenced prior decisions approving inconsistent jury verdicts in the guilt phase and implied that the jury could act similarly during the sentencing phase by refusing to impose the mandatory minimum of five years. The court noted, in contrast, that a judge lacks such authority.

The court did not answer the jury's questions but inquired whether the jury had reached a unanimous verdict, and the jury indicated that it had done so. The jury returned that verdict on the finding instruction provided but altered the language, "We . . . fix [the defendant's] punishment at 5 years," to reflect a two-year sentence. The foreperson crossed through the "5 years," inserted "2 years" in its place, and initialed the change.

After the jury had been discharged, the prosecutor objected to the jury's verdict of a two-year sentence in light of the mandatory minimum of five years required by the statute. The trial court imposed the two-year punishment set by the jury.

Following sentencing, the prosecutor moved the trial court to set aside the jury's sentence and impanel a new jury to ascertain punishment. She argued that the jury did not agree on a punishment authorized by the legislature and averred that unless the defendant and the court agreed to imposition of the mandatory sentence of five years, Code § 19.2-295.1 required the trial court to impanel a new sentencing jury.

The trial court suggested that the mandatory minimum sentence conflicted with the legal principle that prevented the court from increasing a jury's sentencing verdict. The judge concluded that he "[did not] have a hung jury because they agreed on the punishment." Further, the judge posited that he "[did not] know if [he] had the authority to impanel a different jury." The court considered several existing appellate decisions on the issue but determined that none controlled. The judge ultimately concluded: "In my conscience I don't think I can say [that the jury was] wrong. They didn't give him enough time, but as a trial judge I [cannot] raise the sentence."

This Commonwealth's appeal followed.

## II. ANALYSIS

The Commonwealth argues that the trial court erred in imposing the two-year sentence instead of a five-year sentence required by the statute. The defendant responds that the jury, in essence, engaged in jury nullification during the sentencing phase by rejecting the mandatory minimum despite receiving proper instructions. He contends further that the trial court lacked authority to set aside the jury's sentencing verdict because applicable legal principles permitted the court only to shorten, not lengthen, the sentence fixed by the jury.

A trial court's assessment of punishment is reviewed under an abuse of discretion standard. Rawls v. Commonwealth (J.M. Rawls), 272 Va. 334, 351, 634 S.E.2d 697, 706 (2006). A trial court "'by definition abuses its discretion when it makes an error of law. . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions.'" Porter v. Commonwealth, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)). To the extent that determinations regarding sentencing involve the interpretation of a statute or the common law, such an interpretation is a question of law reviewed *de novo* on appeal. See Woodard v. Commonwealth, 287 Va. 276, 280, 754 S.E.2d 309, 311 (2014); Country Vintner, Inc. v. Louis Latour, Inc., 272 Va. 402, 410, 634 S.E.2d 745, 750 (2006).

Code § 18.2-308.2(A) provides that one who possesses a firearm after having been convicted of a felony "shall be guilty of a Class 6 felony." A Class 6 felony is punishable by imprisonment for a minimum of one year and up to five years. See Code § 18.2-10(f). Code § 18.2-308.2(A) provides further, "[h]owever, [that] any person who violates this statute by knowingly and intentionally possessing . . . any firearm and who was previously convicted of a *violent* felony as defined in § 17.1-805 shall be sentenced to a mandatory minimum term of imprisonment of five years." (Emphasis added). "Since a violation of Code § 18.2-308.2(A) is a Class 6 felony punishable under Code § 18.2-10 by a term of imprisonment between one and five years, the mandatory minimum sentence for a defendant convicted of possession of a firearm after a previous violent felony conviction *equals* the statutory maximum sentence [of five years]." J.M. Rawls, 272 Va. at 347-48, 634 S.E.2d at 703 (emphasis added); see Johnson v. Commonwealth, 56 Va. App. 244, 248-53, 692 S.E.2d 651, 653-55 (2010) (rejecting a separation-of-powers challenge to the five-year mandatory minimum sentence in Code § 18.2-308.2).

Here, the parties agree that because the defendant had a prior conviction for robbery, an offense enumerated in Code § 17.1-805(C) by reference to Code § 18.2-58, the "violent felony" provision of Code § 18.2-308.2(A) applies and the mandatory minimum as well as the maximum sentence for the offense is five years. The parties also agree that the trial court properly instructed the jury that the appropriate sentence is five years in prison. Despite receiving proper instructions, however, the jury unanimously fixed the defendant's punishment at two years in contravention of the law as set out in those instructions. The trial court sentenced the defendant in accord with the jury's sentencing verdict.

We hold that the jury's sentence of two years was erroneous and the trial court's imposition of that sentence was void *ab initio*. The judge was obligated to reject the jury's verdict and to impanel a new jury to determine punishment within the prescribed limits established by the legislature for the crime for which the jury had found the defendant guilty.

### A. *The Jury's Role and Sentencing Authority*

The Sixth Amendment to the United States Constitution, applicable to the states through the Due Process Clause of the Fourteenth Amendment, guarantees that "'in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury.'" Apprendi v. New Jersey, 530 U.S. 466, 476-77 (2000) (quoting U.S. Const. amend. VI); see also Va. Const. art. I, § 8. In determining the scope of the right to a jury under both the United States and Virginia Constitutions, we look to the role of the jury at common law. Oregon v. Ice, 555 U.S. 160, 170 (2009), quoted with approval in S. Union Co. v. United States, 132 S. Ct. 2344, 2353 (2012); see Fogg v. Commonwealth, 215 Va. 164, 166, 207 S.E.2d 847, 849 (1974).

"[T]rial by jury has been understood to require that '*the truth of every accusation*, whether . . . in the shape of indictment [or] information, . . . should afterwards be confirmed by the unanimous suffrage of twelve of [the defendant's] equals and neighbours . . . .'" Apprendi,

530 U.S. at 477 (fifth and sixth alterations in original) (quoting 4 William Blackstone, Commentaries on the Laws of England 343 (1769)). "Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary." Blakely v. Washington, 542 U.S. 296, 306 (2004). Trial by jury "'guard[s] against a spirit of oppression and tyranny on the part of rulers[]' and [serves] 'as the great bulwark of [our] civil and political liberties.'" Apprendi, 530 U.S. at 477 (final alteration in original) (quoting 2 Joseph Story, Commentaries on the Constitution of the United States 540-41 (4th ed. 1873)).[4]

Although judge and jury may both serve as finders of fact at trial, their duties and powers are not identical. In some contexts, the jury may exercise greater discretion. For example, under settled principles, a trial court may not render inconsistent verdicts in the guilt phase of a bench trial. Akers v. Commonwealth, 31 Va. App. 521, 528-32, 525 S.E.2d 13, 16-19 (2000); see also Cleveland v. Commonwealth, 38 Va. App. 199, 203-05, 562 S.E.2d 696, 698-99 (2002) (upholding a conviction where the trial judge expressly stated that he exercised lenity in dismissing one of several charges, thereby establishing that his acquittal of the defendant for driving while intoxicated was not inconsistent with his conviction of the defendant for another crime that required proof of driving while intoxicated as an element of the offense). Similarly, a jury's rendering of inconsistent verdicts in the guilt phase of trial constitutes "'[the] assumption of a power which [the jury] ha[s] no *right* to exercise.'" Wolfe v. Commonwealth, 6 Va. App.

---

[4] The Apprendi line of cases holds that a defendant being prosecuted under state law has a constitutional right to have "'any fact (other than prior conviction) that increases the maximum [or minimum] penalty for a crime . . . submitted to a jury[] and proven beyond a reasonable doubt.'" Apprendi, 530 U.S. at 476 (quoting Jones v. United States, 526 U.S. 227, 243 n.6 (1999)); see Alleyne v. United States, 133 S. Ct. 2151, 2160, 2161 n.2, 2163 (2013) (extending Apprendi to mandatory minimums but making clear that judges retain "broad discretion . . . to select a sentence *within* the range authorized by law" (emphasis added)). The defendant was afforded that right here when the court, in the guilt phase of trial, submitted to the jury the question whether the prior felony of which he had been convicted was a "violent" one within the meaning of Code § 18.2-308.2(A).

640, 647-48, 371 S.E.2d 314, 318 (1988) (emphasis added) (quoting United States v. Powell, 469

U.S. 57, 63 (1984)) (internal quotation marks omitted).  Nevertheless, a jury's rendering of

inconsistent verdicts in the guilt phase, although not encouraged, does not, standing alone,

provide a basis for reversal.  Reed v. Commonwealth, 239 Va. 594, 596-98, 391 S.E.2d 75,

76-77 (1990); Walls v. Commonwealth, 38 Va. App. 273, 282, 563 S.E.2d 384, 388 (2002).  The

United States Supreme Court has held that such behavior "implicates no constitutional

guarantee" of a defendant's, and as a result, states may develop their own rules regarding such

verdicts.  Wolfe, 6 Va. App. at 648, 371 S.E.2d at 318; see also Walls, 38 Va. App. at 282, 563

S.E.2d at 388 (noting that the right to due process does not entitle a party to encourage jury

nullification); State v. Bjerkaas, 472 N.W.2d 615, 619 (Wis. Ct. App. 1991) (recognizing that the

jury's nullification power is not a defendant's right but, rather, the price paid for "double

jeopardy [protections]—the government's inability to appeal from even the most lawless

acquittal").

In interpreting the law governing inconsistent verdicts in the Commonwealth, we have

observed that juries may reach such verdicts in the guilt phase "through mistake, compromise, or

lenity, but in such instances it is 'unclear whose ox has been gored,' the government's or the

defendant's."  Wolfe, 6 Va. App. at 648, 371 S.E.2d at 318 (quoting Powell, 469 U.S. at 65).  We

have reasoned further:

> "The most that can be said in such cases is that the verdict shows
> that either in the acquittal or the conviction the jury did not speak
> their real conclusions, but that does not show that they were not
> convinced of the defendant's guilt."  . . .  For this reason and the
> fact that the government is precluded from appealing the acquittal
> verdict, . . . inconsistent verdicts [in the guilt phase of a jury trial]
> should not provide the basis for an appeal by the defendant.

Id. at 647-48, 371 S.E.2d at 318 (quoting Powell, 469 U.S. at 63) (internal quotation marks

omitted).  Thus, "[d]espite the apparent inconsistency of a [jury's] verdict[s] [*in the guilt phase*],

courts may uphold inconsistent verdicts, provided that the evidence supports the verdict challenged on appeal." Kovalaske v. Commonwealth, 56 Va. App. 224, 233, 692 S.E.2d 641, 646 (2010).

In contrast, we are not aware of, and the parties have not cited, any Virginia appellate decision approving jury nullification *in the sentencing phase* of a trial. Indeed, our statutes and case law dictate a contrary conclusion. Once guilt has been determined, both judge *and jury* are constrained by the sentencing limits set by the legislature. "[N]othing in the United States or Virginia Constitution gives a defendant the right to be sentenced by a jury or solely by a jury." Boyd v. Commonwealth, 28 Va. App. 537, 540, 507 S.E.2d 107, 109 (1998) (citing Fogg, 215 Va. at 166-67, 207 S.E.2d at 849-50). Further, "[t]he choice of sentencing procedures is a matter for legislative determination." Duncan v. Commonwealth, 2 Va. App. 342, 344, 343 S.E.2d 392, 393 (1986).

The General Assembly has enacted numerous statutes outlining these sentencing procedures. Id. at 344, 343 S.E.2d at 393-94. Code § 19.2-295, for example, provides that in a jury trial, "the term of confinement . . . and the amount of fine, if any, of a person convicted of a criminal offense, shall be ascertained by the jury" but such must be done "[w]*ithin the limits prescribed by law*." Code § 19.2-295(A) (emphasis added); see Duncan, 2 Va. App. at 344-45, 343 S.E.2d at 393-94; see also Code § 19.2-295.2 (providing circuit courts with the option of imposing an additional term of incarceration and then suspending it for purposes of enforcing post-release supervision); Allard v. Commonwealth, 24 Va. App. 57, 67, 480 S.E.2d 139, 144 (1997) (upholding the enactment of Code § 19.2-295.2 and noting that "under Virginia's statutory scheme, the sentence ascertained by the jury is not final or absolute").

As we observed in Lilly v. Commonwealth, 50 Va. App. 173, 647 S.E.2d 517 (2007), historically,

> American juries . . . exercised little, if any, discretionary control over criminal sentences . . . . The historic norm for the jury was to determine only guilt or innocence, leaving the court alone to fix the punishment consistent with legislatively mandated sentences. Later statutory reforms produced . . . sentencing ranges within which trial judges could exercise . . . discretion. Some states, like Virginia, authorized juries to ascertain a specific felony sentence *within the statutory range*, subject to the trial court's power of suspension.

Id. at 187, 647 S.E.2d at 524 (emphasis added) (citation omitted); see Apprendi, 530 U.S. at 481 (noting that the Court's "periodic recognition of judges' broad discretion in sentencing . . . has been regularly accompanied by the qualification that [such] discretion was *bound by the range of sentencing options prescribed by the legislature*" (emphasis added)); see also Walker v. Commonwealth, 25 Va. App. 50, 61, 486 S.E.2d 126, 132 (1997) (recognizing that in the mid-1990s, seven states in addition to Virginia allowed jury sentencing in noncapital cases). It has long been established, subject to limited statutory exception, that neither a judge nor a jury may fix a sentence *exceeding* the statutory range and that such a penalty is void as to the excess. See, e.g., Rawls v. Commonwealth (J.K. Rawls), 278 Va. 213, 218, 221, 683 S.E.2d 544, 547, 549 (2009); Allard, 24 Va. App. at 67, 480 S.E.2d at 144.

Consistent with its role in determining sentencing procedures and setting statutory ranges for crimes, Virginia's General Assembly also established mandatory *minimum* sentences for certain crimes. Lilly, 50 Va. App. at 187, 647 S.E.2d at 524. We have expressly held that in doing so,

> [the legislature has] produced a floor below which no judge *or jury* [can] go. A trial court's authority to depart downward below a mandatory minimum is "nonexistent," Mouberry v. Commonwealth, 39 Va. App. 576, 585, 575 S.E.2d 567, 571 (2003), because the legislative purpose was to divest trial judges *and juries* of "all discretion" to sentence below the threshold minimum, In re Commonwealth of Virginia, 229 Va. 159, 163, 326 S.E.2d 695, 697 (1985).

Id. at 187-88, 647 S.E.2d at 524 (emphases added); see also Woodard, 287 Va. at 280, 754 S.E.2d at 311 (holding that in the context of a bench trial, "'[o]nce a court has entered a judgment of conviction . . . , the question of the penalty . . . is entirely within the province of the [General Assembly]'" (final alteration in original) (quoting Starrs v. Commonwealth, 287 Va. 1, 9, 752 S.E.2d 812, 817 (2013))); cf. Schmitt v. Commonwealth, 262 Va. 127, 139-41, 547 S.E.2d 186, 195-96 (2001) (implicitly rejecting jury nullification in the sentencing phase by upholding a trial court's removal of a prospective juror who would not consider voting for the death penalty even if applicable instructions required her to do so).

These same principles prevent a defendant from "present[ing] argument about [a] mandatory minimum sentence during the *guilt phase* [of trial]." Walls, 38 Va. App. at 282, 563 S.E.2d at 388.

> [T]he only purpose served by allowing . . . [such] argument . . . during the *guilt phase* [would be] to encourage the jury to acquit the defendant even though the evidence might prove him guilty. Allowing closing argument which encourages an acquittal irrespective of the evidence would, in essence, permit the jury to do in the guilt phase *that which it lacks the authority to do in the sentencing phase—impose a sentence less than the statutory minimum*—by finding the defendant not guilty.

Id. (second emphasis added), quoted with approval in Ford v. Commonwealth, 48 Va. App. 262, 269-70, 630 S.E.2d 332, 336 (2006); see Lilly, 50 Va. App. at 185-88, 647 S.E.2d at 523-24 (rejecting the defendant's claim that due process entitled her to a jury instruction about the mandatory minimum sentence in the guilt phase of trial).

Virginia law and the principles surrounding mandatory minimum sentences compel the conclusion that the jury here could not lawfully engage in nullification in the sentencing phase and was constrained to render a sentencing verdict that complied with the mandatory sentence of five years set by the legislature. See also United States v. Hardy, 46 M.J. 67, 70 (C.A.A.F. 1997) (noting that the United States Court of Appeals for the Armed Forces has held "that jury

nullification is impermissible when the Code [of Military Justice] provides for a mandatory minimum sentence and that any such sentence nullification would be subject to reconsideration or a rehearing"); Neace v. Commonwealth, 978 S.W.2d 319, 322 (Ky. 1998) (holding that where the jury returned a unanimous verdict of five years despite proper instructions that the range was twenty years to life, the trial court properly concluded that the sentence was "unlawful" and that "[a]ny other result would permit juries to re-write penalty statutes and effectively nullify the sentencing laws"). Thus, the sentencing verdict of two years rendered by the jury was improper.

### B. The Trial Court's Role Following the Jury's Sentencing Verdict and on Remand

The trial court recognized the problem associated with the fact that the jury's sentencing verdict was lower than the punishment of five years mandated by statute. However, because the verdict was unanimous, the court determined that it lacked authority to impanel a new jury to consider the defendant's sentence. The court focused on the language of Code § 19.2-295.1, which provides: "If the jury cannot agree on a punishment, the court shall impanel a different jury to ascertain punishment, unless the defendant, the attorney for the Commonwealth, and the court agree, in the manner provided in § 19.2-257, that the court shall fix punishment." The court reasoned that because the jury agreed on a punishment, albeit one below the range prescribed by the applicable statutes, and because the defendant did not agree to an adjustment in that punishment, it had no authority to alter the two-year sentence. Upon *de novo* review of this legal ruling, we reach a contrary conclusion. We hold that the Supreme Court of Virginia's decision in J.K. Rawls, 278 Va. 213, 683 S.E.2d 544, required the trial court to reject the jury's sentence of two years and to empanel a new jury for sentencing.

In deciding J.K. Rawls, the Supreme Court stated broadly:

> [W]e adopt the following rule that is designed to ensure that *all* criminal defendants whose punishments have been fixed *in violation of the statutorily prescribed ranges* are treated uniformly without any speculation. We hold that a sentence imposed in

- 12 -

> violation of a prescribed statutory range of punishment is void *ab initio* because "the character of the judgment was not such as the [C]ourt had the power to render." Thus, a criminal defendant in that situation is entitled to a new sentencing hearing. This common law rule of jurisprudence will eliminate the need for courts to resort to speculation *when determining how a jury would have sentenced a criminal defendant* had the jury been properly instructed or *had the jury properly followed correct instructions*. Applying this rule to Rawls, we hold that he is entitled to a new sentencing hearing on his second degree murder conviction . . . .

Id. at 221, 683 S.E.2d at 549 (second alteration in original) (first, second, fourth, and fifth emphases added) (citations omitted) (quoting Anthony v. Kasey, 83 Va. 338, 340, 5 S.E. 176, 177 (1887)).[5]

The defendant correctly argues that the facts in J.K. Rawls are distinguishable from those in his case. Rawls' sentence was above, rather than below, the statutorily prescribed range, and the sentencing error in J.K. Rawls resulted from faulty jury instructions rather than the jury's disregard of proper instructions. Id. at 215-16, 683 S.E.2d at 546. Despite these differences, however, the "common law rule of jurisprudence" set out by the Supreme Court was not limited to the facts of that case. Id. at 221, 683 S.E.2d at 549. Its holding expressly applies to a jury's disregard of "correct instructions." Id. It also expressly applies to "*all* criminal defendants whose punishments have been fixed in violation of the statutorily prescribed ranges." Id. (emphasis added). It therefore implicitly, and logically, includes both those whose sentences are above the statutory range and those whose sentences are below it. See id. at 220, 683 S.E.2d at 548 (citing Jones v. Commonwealth, 61 Va. (20 Gratt.) 848, 858-59 (1871), involving the award of a new trial "when the jury fixed the defendant's punishment *below* the . . . mandatory

---

[5] J.K. Rawls created a "common law rule of jurisprudence." 278 Va. at 221, 683 S.E.2d at 549. That rule is designed to remedy inconsistencies in procedures previously employed by Virginia's appellate courts to fix erroneous sentences. Id. In deciding J.K. Rawls, the Court did not rely upon Code § 19.2-295.1. Id. That statute was not enacted until 1994, see 1994 Va. Acts chs. 828, 860, 862, 881, *after* all but one of the cases serving as the impetus for the Court's 2009 decision in J.K. Rawls.

minimum," before the advent of the bifurcated trial system (emphasis added)); see also Neace, 978 S.W.2d at 321-22 (holding that a jury verdict *below* the statutory minimum was "unlawful" and that the trial court "properly corrected the sentence to conform to the law"). Thus, the holding in J.K. Rawls compels the conclusion that the jury's decision to disregard the proper instruction requiring it to sentence the defendant to five years in prison was error and that the sentence it fixed was invalid.

Further, we hold that in this case, under these circumstances, the proper procedure for correcting the error is to remand the case for a new sentencing hearing. See Code § 19.2-295.1 (providing that "[i]f the sentence imposed pursuant to this section is subsequently set aside or found invalid solely due to an error in the sentencing proceeding, the court shall impanel a different jury to ascertain punishment, unless the defendant, the attorney for the Commonwealth and the court agree, in the manner provided in § 19.2-257, that the court shall fix punishment"); see also J.K. Rawls, 278 Va. at 220, 683 S.E.2d at 548 (citing Jones, 61 Va. (20 Gratt.) at 858-59).[6]

The Commonwealth specifically requested this remedy in the trial court and assigned error to that court's refusal to impanel a new jury to remedy the unlawful sentence. On brief and in oral argument, however, the Commonwealth asks us to remand to the trial court with instructions to impose a sentence of five years pursuant to the reasoning in Hines v. Commonwealth, 59 Va. App. 567, 721 S.E.2d 792 (2012). In Hines, we refined the Supreme Court's holding in J.K. Rawls as it applies to cases in which only a single mandatory sentence is available, explaining:

> Ordinarily, "a criminal defendant . . . is entitled to a new
> sentencing hearing" where "a sentence [is] imposed in violation of

---

[6] Of course, if all parties agree to imposition of the mandatory five-year sentence, a new sentencing proceeding before a new jury is unnecessary and the trial court can impose the agreed-upon sentence consistent with Code § 19.2-295.1.

> a prescribed statutory range of punishment." [J.K.] Rawls, 278 Va. at 221, 683 S.E.2d at 549. However, because [on the facts of this case] a term of three years imprisonment is *the only available sentence* for the trial court to impose, a new sentencing hearing is unnecessary. Accordingly, we need not remand for a new sentencing hearing.

Hines, 59 Va. App. at 581 n.7, 721 S.E.2d at 798 n.7 (first, second, and fourth alterations in original) (citation omitted), quoted with approval in Gordon v. Commonwealth, 61 Va. App. 682, 689, 739 S.E.2d 276, 279 (2013). Principles of judicial economy supported this result under the facts in Hines.

We conclude, however, that regardless of judicial economy, Hines is distinguishable and does not apply here. Hines involved a sentence that *exceeded* the applicable mandatory fixed sentence, and the defendant in Hines *favored* the sentence reduction. 59 Va. App. at 570, 721 S.E.2d at 793. In this case, by contrast, the trial court imposed a sentence *below* the mandatory five years, and the defendant *opposes* the Commonwealth's request for an increase of his sentence to the mandatory five years. Additionally, at oral argument, the defendant asserted that if the Court remands the case, resentencing by a jury is the only appropriate remedy. Current Virginia law gives the defendant a statutory right to be sentenced by a jury, and unless the General Assembly provides otherwise, that right takes precedence over principles of judicial economy. Although this procedure may appear formalistic, it is the appropriate resolution in this case absent agreement of the parties as prescribed by Code § 19.2-295.1. Therefore, we remand the case for sentencing by a new jury in a manner consistent with the law.[7]

---

[7] The defendant has not suggested, either in the trial court or on appeal, that resentencing will violate double jeopardy protections. See, e.g., Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998) (noting Rule 5A:18 applies even to constitutional claims). We note, however, that the Supreme Court of the United States has held that double jeopardy protections do not apply in the noncapital sentencing context. See Monge v. California, 524 U.S. 721, 728-34 (1998); see also State v. Hernandez, 273 P.3d 774, 780-81 (Kan. 2012) (opining that Monge "remains good law").

- 15 -

### III. CONCLUSION

The jury's sentence of two years was unlawful and the trial court's imposition of that sentence was void *ab initio*. The court was obligated to reject the jury's verdict and to impanel a new jury to determine punishment within the limits established by the legislature for the crime for which the original jury found the defendant guilty. Therefore, we reverse the trial court's ruling in part, vacate the defendant's sentence, and remand the case to the trial court for a new sentencing proceeding before a different jury.

<u>Reversed in part,</u>
<u>vacated in part,</u>
<u>and remanded with instructions.</u>