COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, AtLee and Chaney
Argued at Fredericksburg, Virginia


COVANTA FAIRFAX, LLC, ET AL.

                                    MEMORANDUM OPINION[*] BY

v.      Record No. 0072-23-4           JUDGE RICHARD Y. ATLEE, JR.
                                          MAY 28, 2024

LEXINGTON INSURANCE COMPANY, AS SUBROGEE
  OF THE COUNTY OF FAIRFAX, VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Dontae L. Bugg, Judge

Hugh M. Fain, III (Edward E. Bagnell, Jr.; Patricia B. Turner; Kasey
L. Hoare; Spotts Fain P.C., on briefs), for appellants.

Paul A. Casetta (W. Benjamin Woody; Denenberg Tuffley, PLLC;
Harman Claytor Corrigan & Wellman, on brief), for appellee.


Appellee Lexington Insurance Company, as subrogee[1] for the County of Fairfax, filed a

lawsuit against appellants Covanta Fairfax, LLC and Covanta Holding Corporation (collectively

"appellants"), alleging breach of contract and seeking monetary damages related to Covanta

Fairfax's failure to accept the County's waste after a fire at Covanta Fairfax's facility. Appellants

filed a plea in bar, arguing that the County failed to timely submit a reconciliation statement and

invoice for the damages, which was a condition precedent to Covanta Fairfax's obligation to pay.

The circuit court granted the plea in bar and dismissed the case without prejudice. On appeal,

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] "Subrogation is merely the 'substitution of one person in the place of another with reference to a lawful claim, demand or right so that he who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies, or securities.'" *Brown v. Kirkpatrick*, 78 Va. App. 1, 5 (2023) (quoting *Llewellyn v. White*, 297 Va. 588, 599 (2019)). "In the insurance context, an insurer who has paid a loss becomes a subrogee to the rights of their insured against the responsible party with respect to any loss covered by the policy." *Id.*

appellants do not challenge the circuit court's decision to grant the plea in bar. They argue only that the circuit court erred by dismissing the case without prejudice. They contend that the circuit court should have dismissed the case with prejudice because the time for the occurrence of the condition precedent, the time to deliver the specific statements and invoices, has expired. We agree and reverse.

## I. BACKGROUND

Covanta Fairfax and the County entered into a Waste Disposal Agreement ("WDA"), which governs the County's delivery of municipal solid waste to Covanta Fairfax's facility. Due to a fire, Covanta Fairfax was unable to accept the County's waste for a prolonged period while the facility was being repaired. Because of this, the County had to dispose of its waste elsewhere.

The WDA, however, provides for situations where Covanta Fairfax fails to accept the County's waste. Under section 2.2.3 of the WDA, Covanta Fairfax could be obligated to pay the County the "Differential Rate" for any waste not accepted. The "Differential Rate" is the "positive difference, if any, between" the costs the County incurs to dispose of its waste at an alternate facility and the cost it would have paid to dispose of its waste at Covanta Fairfax's facility. If there were no additional costs incurred, then Covanta Fairfax owes no differential rate.

The WDA sets out the procedure to follow if a party believes it is owed a differential rate. Section 4.7.2 sets out how to calculate the differential rate. It provides,

> Within thirty (30) Days following each Billing Year, the Parties shall determine the aggregate Differential Rate amount, if any, owed by [Covanta Fairfax] to the County pursuant to Sections 2.2.3 and 2.4.2 (i.e., the Differential Rate multiplied by the number of County Tons calculated pursuant to Section 2.2.3 and 2.4.2) and subject to the proviso in Section 2.1.4 with respect to Differential Rate, for the previous Billing Year, and [Covanta Fairfax] shall

pay to the County such determined amount pursuant to Section 4.8.5.

If the County determines a differential rate amount is owed, it must follow the procedure set out in section 4.8.5, which, in relevant part, provides:

> Within thirty (30) Days following the end of each Billing Year, [Covanta Fairfax] or, as applicable, the County, or both, shall prepare an annual settlement or reconciliation statement and invoice setting forth any amounts due either Party pursuant to this Agreement, and in accordance with this Section 4.8.5. The annual reconciliation invoice shall include documentation sufficient to justify payment by the County to [Covanta Fairfax] or [Covanta Fairfax] to the County. Payment of the annual reconciliation shall be made pursuant to the procedures set forth in Sections 4.8.1 - 4.8.3 above.

In March 2021, Lexington, as subrogee for the County, filed a complaint against the appellants for breach of contract. The complaint alleged that the County had to dispose of its waste using alternate means for an extended period, due to the fire at Covanta Fairfax's facility, and that the County had incurred $5,781,046 in damages. Rather than pursuing a differential rate payment from Covanta Fairfax under the WDA, the County submitted a claim to Lexington under the County's insurance policy. Lexington paid the claim, and then it sought to recover from appellants under the WDA.

Covanta Fairfax filed a plea in bar, contending that the WDA, specifically section 4.8.5, required the County to deliver to Covanta Fairfax a reconciliation statement and invoice within 30 days of the end of the billing year setting out any amounts due for that year.[2] Covanta Fairfax

---

[2] Section 1.1 defines "Billing Year" to mean "Fiscal Year." Under the WDA, the end of the "Fiscal Year" is June 30. Thus, to comply with the 30-day requirement in section 4.8.5, the County would have to submit its reconciliation statement and invoice on or before July 30 for any amounts it claims it is owed for the preceding year. Lexington's complaint alleged that Covanta Fairfax failed to accept the County's waste between February 2, 2017, and January 2018, spanning two billing years. Thus, the County had to submit its reconciliation statements and invoices by July 30, 2017, for damages during the first billing year, and by July 30, 2018, for damages during the second billing year.

argued that Lexington's case against it is barred from proceeding because the County did not timely deliver the reconciliation statements and invoices, and it asked the circuit court to resolve the factual issue of whether the County delivered the required statements.

Lexington initially demanded a jury trial on the plea in bar. The circuit court, however, dismissed the jury because Lexington conceded that the County did not deliver the reconciliation statements and invoices to Covanta Fairfax within 30 days of the end of the 2017 and 2018 billing years. It found that the remaining issue, whether failure to file the statements and invoices barred recovery, was a legal question to be decided by the circuit court.

After argument on the issue, the circuit court found that delivery of the reconciliation statements and invoices is a condition precedent to the County's right to payment from Covanta Fairfax. It found that the delivery of the statement and invoice is "the trigger" to Covanta Fairfax's obligation to pay and there is no duty to pay until the statements and invoices are delivered.

But the circuit court also noted that the WDA contained a waiver provision in section 7.11, which, in relevant part, provides,

> Waiver. No delay in exercising or failure to exercise any right or remedy accruing to or in favor of either Party shall impair any such right or remedy or constitute a waiver thereof. . . . Neither this Agreement nor any provision hereof may be changed, modified, amended or waived except by a written instrument signed by a duly authorized officer of the Party against whom enforcement of such change, modification, amendment or waiver is sought.

The circuit court concluded that this waiver provision was very broad and applied to the 30-day time frame in section 4.8.5, finding that section 7.11 meant "the parties have expressly contracted for a waiver of such delay or failure to pursue that right." Thus, while it granted the plea in bar, it dismissed the action "without prejudice because there still may exist a window for the County to comply with the obligations of 4.8.5." Appellants now challenge that ruling.

- 4 -

## II. ANALYSIS

Appellants agree with the circuit court's decision to grant the plea in bar and dismiss the case. On appeal, they challenge only the circuit court's decision to dismiss the case without prejudice rather than with prejudice.[3] They argue that the circuit court's decision to dismiss without prejudice was based upon an incorrect interpretation of the WDA.

We review the circuit court's decision to dismiss without prejudice for an abuse of discretion. *Primov v. Serco*, 296 Va. 59, 66 (2018). A "trial court 'by definition abuses its discretion when it makes an error of law.'" *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017) (quoting *Commonwealth v. Greer*, 63 Va. App. 561, 568 (2014)). Accordingly, our "abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Id.* at 166-67 (quoting *Greer*, 63 Va. App. at 568). To the extent

---

[3] Lexington argues that we do not have jurisdiction to consider this appeal because a dismissal without prejudice is not a final order under Code § 17.1-405. It contends that the order is not final because it is not on the merits and permits them to file a new lawsuit. While Code § 17.1-405 defines our jurisdiction, it does not define what constitutes a final order for purposes of appeal; Rule 1:1 does. Rule 1:1(b) states that an

> order or decree is final if it disposes of the entire matter before the court, including all claim(s) and all cause(s) of action against all parties, gives all the relief contemplated, and leaves nothing to be done by the court except the ministerial execution of the court's judgment, order or decree.

Further, Rule 1:1(d) specifically references both an order "sustaining a plea in bar" and an order "sustaining a plea in bar with prejudice" as final orders even if the order did not expressly dismiss the claim. The inclusion of both terms indicates that an order sustaining a plea in bar without prejudice constitutes a final order. The Supreme Court has likewise treated a dismissal without prejudice as a final order. *Gilbreath v. Brewster*, 250 Va. 436, 439 (1995) (considering whether a dismissal without prejudice should have been a dismissal with prejudice under Rule 3:3). And it treats a nonsuit order, which, like a dismissal without prejudice, permits refiling of a lawsuit, as a final order for purposes of appeal. *Kosko v. Ramser*, 299 Va. 684, 687 (2021) ("Nonsuit orders are generally treated as final orders for purposes of Rule 1:1."). Accordingly, we find that the order in this case is a final order for purposes of appeal and, consequently, we do have jurisdiction.

that determination requires interpretation of a contract, such an interpretation is a question of law subject to de novo review. *Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 290 Va. 36, 43 (2015).[4]

Neither party challenges the circuit court's ruling that submitting the reconciliation statement and invoice is a condition precedent to any payment obligation Covanta Fairfax may have.[5] Lexington concedes that the County did not submit the invoice within the 30 days required by section 4.8.5. The 30-day deadline cannot be met, and thus, the sole question before us on appeal is whether the waiver provision in section 7.11 applies to section 4.8.5 and creates an extension of time to submit the reconciliation statement and invoice to Covanta Fairfax.

"The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." *Palmer & Palmer Co. v. Waterfront Marine Constr., Inc.*, 276 Va. 285, 289 (2008) (quoting *W.F. Magann Corp. v. Virginia-Carolina Elec. Works, Inc.*, 203 Va. 259, 264 (1962)). We construe contracts a whole, and "[c]ontract language will not be treated as meaningless where it can be given a reasonable meaning." *Condo. Servs. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 572

---

[4] At multiple points, the dissent seems to suggest that we owe deference to the trial court's interpretation of the contract. *See infra* p. 11 ("The circuit court appropriately read it in a way that harmonizes its various provisions and is consistent with the equitable readings that we are supposed to give contracts. On this deferential standard of review, . . . ."); *infra* p. 16 ("Given the plausible multiple readings of this contract, the circuit court did not commit reversible error by reading the W.D.A. differently from today's majority . . . .."). While we owe deference to the circuit court's decision to dismiss with or without prejudice, we owe no deference to its interpretation of the contract. *Primov*, 296 Va. at 66.

[5] The dissent contends that "Article Four suggests that the submission of the invoice establishes the date of calculating interest rather than entitlement to payment." The circuit court, however, concluded that the 30-day deadline was a condition precedent, or "trigger," to Covanta Fairfax's obligation to pay, and it found there was no duty to pay "until those statements and invoices are presented." Lexington has not assigned cross-error to that ruling, accordingly, "it has become the law of the case, and we will not consider the issue further." *Bd. of Supervisors v. Stickley*, 263 Va. 1, 6 (2002).

(2011) (quoting *Ross v. Craw*, 231 Va. 206, 214 (1986)). "When two provisions of a contract seemingly conflict, if, without discarding either, they can be harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole, this should be done." *Plunkett v. Plunkett*, 271 Va. 162, 168 (2006) (quoting *Ames v. Am. Nat'l Bank of Portsmouth*, 163 Va. 1, 39 (1934)).

Section 4.8.5 requires either party to submit a reconciliation statement and invoice within 30 days of the end of the billing year for any amounts that it claims it is owed. Section 7.11 is a general waiver provision that excuses any "delay in exercising or failure to exercise any right or remedy." For the following three reasons, we find that the waiver provision in section 7.11 does not apply to nullify the 30-day deadline in section 4.8.5.

First, by its plain language, section 7.11 does not apply to the 30-day deadline provision in section 4.8.5 because it is a condition precedent. Section 7.11 applies to "any right or remedy." Under traditional contract law, the County did not have a right to payment "unless the condition occurs or its non-occurrence is excused." *Rastek Constr. & Dev. Corp. v. Gen. Land Com. Co.*, 294 Va. 416, 425 (2017) (quoting Restatement (Second) of Contracts § 225 (Am. L. Inst. 1981)). Because the condition never occurred, the County did not have a right to repayment.

For similar reasons, section 4.8.5 does not fall within the definition of remedy. A "remedy" is "[t]he means of enforcing a right or preventing or redressing a legal wrong: legal or equitable relief." *Remedy*, *Black's Law Dictionary* (10th ed. 2014). "A mere condition precedent is not the same thing as an affirmative contractual promise or duty." *Rastek*, 294 Va. at 429. A condition precedent is "'[a] future and uncertain event on which the existence or extent of an obligation or liability depends' or 'an uncertain act or event that triggers or negates a duty to render a promised performance.'" *Id.* (alteration in original) (quoting *Condition*, *Black's*

- 7 -

*Law Dictionary* (10th ed. 2014)).  Until such time as that condition occurred and triggered an obligation on the part of Covanta Fairfax, there was no legal wrong to prevent or redress.[6] Accordingly, the County, and therefore Lexington as its subrogee, have no right or remedy under section 4.8.5 until such time as the condition, submitting a reconciliation statement and invoice, occurred.

Second, when we interpret contracts, "a specific provision of a contract governs over one that is more general in nature."  *Condo. Servs.*, 281 Va. at 573.  While section 7.11 is a general provision relating to the timeliness, or lack thereof, of acting under the terms of the contract, the WDA contains a *specific* provision governing the particular time frame for submitting the annual reconciliation and invoice.  *Id.* ("[W]here there are two clauses in any respect conflicting, that which is specially directed to a particular matter controls in respect thereto over one which is general in its terms." (quoting *Mut. Life Ins. Co. v. Hill*, 193 U.S. 551, 558 (1904))).  Although the general provision in section 7.11 "still has effect, the scope of its operation is necessarily limited to the extent it would govern" the timeline for filing the annual reconciliation statements and invoices, "which is instead governed by the more specific provision set forth" in section 4.8.5.  *Jimenez v. Corr*, 288 Va. 395, 409 (2014).  Thus, to the extent these provisions conflict, the more specific provision in section 4.8.5 controls.

Finally, we will not interpret a contract in a way that renders language meaningless if it can be given a reasonable meaning.  *Condo. Servs.*, 281 Va. at 572.  Applying the waiver provision to the 30-day deadline in section 4.8.5 renders that provision (and other similar

---

[6] The dissent highlights the fact that Section 4.8.5 does not say what happens if the 30-day deadline is not met.  But we find this unpersuasive because it ignores the very nature of a condition precedent.  Any obligation or duty subject to a condition precedent is only owed if the condition occurs, and if the condition does not occur, that obligation or duty is discharged. *Rastek*, 294 Va. at 425-26.  Thus, as here, where the condition did not occur, Covanta Fairfax had no duty to pay.

provisions) completely meaningless. Lexington does not dispute this but argues nonetheless that this was the intent of the parties. Not only is that interpretation contrary to our canons of construction, but it also defies common sense to think that two sophisticated parties would draft a contract with specific terms, here a specific deadline, only to include a general provision to render those specific terms meaningless. *RECP IV WG Land Invs. LLC v. Capital One Bank USA*, 295 Va. 268, 289 (2018) ("Our presumption is always that the parties 'were trying to accomplish something rational. Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons.'" (quoting *Mount Aldie, LLC v. Land Tr. of Va., Inc.*, 293 Va. 190, 200 (2017))).

Keeping these principles in mind, we find that section 7.11 does not nullify the 30-day deadline in section 4.8.5. Section 7.11 remains an enforceable provision. For example, if the County had timely submitted the reconciliation statement and invoice within the timeline, but Covanta Fairfax did not pay, the County's right to payment would not be waived by any failure or delay on its part to pursue collection of that payment. By submitting the reconciliation statement, the County would have triggered the right to payment, and it would therefore fall within the provisions of section 7.11. Section 7.11 would also permit the County to pursue any positive differential rate amounts owed in other years, even though it did not do so in 2017 and 2018.

Contrary to Lexington's claims that this interpretation focuses on an isolated statement, this interpretation is the only way to harmonize the provisions of the contract without rendering one provision meaningless. It is also consistent with the rule that specific provisions control over general provisions. *Condo. Servs.*, 281 Va. at 573. Therefore, we find that the waiver provision in section 7.11 does not nullify the 30-day deadline to submit the reconciliation statement and invoice in section 4.8.5. Because the 30-day deadline to file the statement and invoice had already

passed, and section 7.11 does not nullify the deadline, the condition precedent can no longer occur, and Covanta Fairfax did not have any obligation. *See Rastek*, 294 Va. at 425-26. Therefore, by interpreting the contract to allow waiver of the 30-day deadline, the circuit court committed an error of law. A discretionary decision guided by erroneous legal conclusions is an abuse of discretion. *Coffman*, 67 Va. App. at 166. Accordingly, the circuit court's decision to dismiss the case without prejudice rather than with prejudice was an abuse of discretion.

## III. CONCLUSION

The filing of the reconciliation statement and invoice was a condition precedent to Covanta Fairfax's obligation to pay the County. Because the time for occurrence had passed, and the condition could no longer occur, that obligation was discharged. Thus, the circuit court should have dismissed the case with prejudice. This case is remanded to the circuit court to enter an order consistent with this opinion.

*Reversed and remanded.*

Chaney, J., dissenting.

The circuit court did not commit reversible error by dismissing Lexington's claim without prejudice. I would hold that the circuit court read the W.D.A. correctly. The circuit court appropriately read it in a way that harmonizes its various provisions and is consistent with the equitable readings that we are supposed to give contracts. On this deferential standard of review, this Court should affirm the circuit court's judgment as a proper exercise of its discretion. I respectfully dissent.

Equity abhors a forfeiture. *E.g.*, *Butler v. Stegmaier*, 77 Va. App. 115, 131 (2023); 8 Corbin on Contracts § 37.2, *Avoidance of Forfeiture by Eliminating an Express Condition on Performance on Time* (Dec. 2023) ("If the enforcement of an express provision causes an excessive penalty or an unjust forfeiture, equity will prevent enforcement."). A forfeiture occurs where an otherwise straightforward application of a contract provision results in the loss of a substantial right. *Forfeiture (2)*, Black's Law Dictionary (11th ed. 2019) (the "loss of a right, privilege, or property because of a crime, breach of obligation, or neglect of duty"); 8 Corbin on Contracts § 37.2 ("Forfeiture implies a loss perhaps greater than one's expectations so that courts for reasons of public policy have often gone beyond a strict contractual approach to guard against forfeitures."). The complete deprivation of the recovery of damages—as may have occurred here—is such a loss.

Where parties contract for a forfeiture to occur, "we will enforce the provision without any wincing on our part concerning its alleged harshness or unfairness." *Hunter v. Hunter*, 298 Va. 414, 424 (2020). But we will only do so only where the "instrument . . . give[s] the right of forfeiture in terms so clear and explicit as to leave no room for any other construction." *Id.* (quoting *Davis v. Wickline*, 205 Va. 166, 169 (1964)).

The W.D.A. does not provide for forfeiture with that kind of clarity. In fact, it is easily read to *not* result in Covanta losing its claim for legal damages because of its non-compliance with the

W.D.A.'s 30-day deadline to submit invoices. Section 4.8.5 provides that reconciliation invoices "must" be brought within 30 days before Lexington (at the time of the required performance, Fairfax)[7] may seek recovery of the differential rate amount. Section 4.8.5 does not say what happens if this 30-day deadline is not met. Given the lack of clarity on the matter, forfeiture is not an appropriate remedy.

The circuit court here agreed. It read § 4.8.5 in light of § 7.11, which provides that the failure to exercise a right does not result in the total forfeiture of that right. It concluded that Lexington did not lose all right to recovery when Fairfax failed to timely tender its invoices. This is a reasonable reading of the contract, as § 4.8.5 appears to address the right to precalculated payments rather than the right of recovery for damages. *Compare* W.D.A. § 4.8.5 ("The annual reconciliation invoice shall include documentation sufficient to justify payment by . . . the Company to the County. Payment of the annual reconciliation shall be made pursuant to the procedures set forth in Section 4.8.1.–4.8.3 above."), *with id.* § 4.8.3 ("The Company shall pay to the County all amounts calculated pursuant to Section 4.8.1 that are due and owing and invoiced by the County, within thirty (30) Days after the date of the receipt by the Company of the County's invoices."), *and id.* § 4.7.2 ("Differential Rate . . . [T]he Company shall pay to the County such determined amount pursuant to Section 4.8.5.").

Article Four suggests that (1) the right to payment and (2) proper invoicing are independent considerations:

> The County shall pay the Company the Disposal Fee and other amounts, if any, due and owing to the Company *and* invoiced by the Company pursuant to Section 4.8.1, within thirty (30) Days after the

---

[7] Having paid out its insurance policy on this dispute, Lexington may bring this contract action in the County of Fairfax's place as its subrogree. *See, e.g.*, *Brown v. Kirkpatrick*, 78 Va. App. 1, 5 (2023).

> date of the receipt by the County of properly formatted and
> completed invoices.

W.D.A. § 4.8.2 (emphasis added). Similar language appears throughout the Article. *See id.*

§§ 4.8.1(d) (governing invoices generally); 4.8.3 (repeating this language when discussing payment

to the county); 4.8.5 (discussing the procedure for submitting invoices of amounts already due).

Moreover, Article Four suggests that the submission of the invoice establishes the date of

calculating interest rather than entitlement to payment.[8] *See* W.D.A. §§ 4.8.2 ("If the County fails

to remit the full amount payable when due . . . *interest* on the unpaid portion that is due and owing

at such time shall accrue at the rate provided in Section 7.16." (emphasis added)); 4.8.5 ("If,

pursuant to dispute resolution, final resolution is determined in favor of the County submitted

invoice(s), then the County shall be reimbursed for all monies due *with interest thereon* at the rate

specified in Section 7.16 or if in favor of any Company submitted invoice, then the *Company* shall

be reimbursed for all monies due with interest thereon at the rate specified in Section 7.16."

(emphases added)).

Note also that § 4.8.5 does not contain any language making the 30-day timeliness

requirement *of the essence* to the contract. *See Potomac Power Co. v. Burchell*, 109 Va. 676, 685

(1909) (where time is not of the essence, failure to timely fulfill a condition precedent will not result

in a forfeiture); 8 Corbin on Contracts § 37.1, *When time is of the essence—Common Law and

Equity compared* (Dec. 2023) ("That a contract specifies a performance deadline does not, by itself,

---

[8] The majority contends that we cannot read the W.D.A. this way because the circuit court ruled that compliance with the 30-day deadline was necessary to the right of payment, and that this finding is "the law of the case." *See supra* p. 6 n.5. I do not dispute the circuit court's finding that presenting the invoices was a condition precedent to payment. But I do not read its oral pronouncement to make the 30-day deadline of the essence to that condition. There is a distinction between a condition precedent to the County's duty to pay and Covanta's legal entitlement to recovery—evidence for the latter of which I read the contract. The circuit court's finding of a condition precedent does not control how we conduct this inquiry. *See Primov v. Serco*, 296 Va. 59, 66 (2018) (this Court reviews the interpretation of a contract without deference).

make time of the essence."); *see also id.* ("Generally, time is not of the essence in real estate contracts unless the contract specifically contains the language 'time is of the essence' thereby making the parties' intent unmistakable." (quoting *Silver Props., L.L.C. v. Ernest E. Megee, L.P.*, 2000 Del. Ch. LEXIS 67, at *5-6 (Apr. 27, 2000))).[9] If the parties wanted this one clause to result in a total forfeiture, this objective would have been explicit in the contract. *See RECP IV WG Land Invs. LLC v. Capital One Bank USA*, 295 Va. 268, 289 (2018) ("Our presumption is always that the parties 'were trying to accomplish something rational. Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons.'" (quoting *Mount Aldie, LLC v. Land Tr. of Va., Inc.*, 293 Va. 190, 200 (2017))). But unlike the subject matter of interest payments, Article Four does not contain any "if . . . then" statements related to the 30-day deadline and entitlement to recovery on a claim. If the text of the W.D.A. does not set forth the penalty of forfeiture clearly in § 4.8.5, the Court should not strain to find it.

I, therefore, find the circuit court's reading of the W.D.A. a more than reasonable one. Article Four governs the right to payment of a precalculated amount and set interest on those amounts. It does not address Lexington's right to recovery in a court of law. Compliance with § 4.8.5 is not the source of Lexington's right to recovery; Covanta's nonperformance of its contract obligation is.

Reading the W.D.A. in a contrary manner unnecessarily sets different provisions of that contract in conflict with each other. *Plunkett v. Plunkett*, 271 Va. 162, 168 (2006) ("When two provisions of a contract *seemingly conflict, if*, without discarding either, they can be *harmonized* so as to effectuate the intention of the parties as expressed in the contract considered as a whole, *this should be done*." (emphases added) (citation and quotation marks omitted)). If we read Article Four

---

[9] Out-of-state decisions are not binding on this Court, but they may be cited as persuasive authority. *See Thorne v. Commonwealth*, 66 Va. App. 248, 255-56 (2016) (relying on out-of-state cases).

- 14 -

to set forth rights to precalculated damages and interest rates, these provisions no longer conflict with one another. Since many of the majority's cited cases require a conflict, this harmonious reading makes those cases distinguishable. *E.g.*, *Jimenez v. Corr*, 288 Va. 395, 409 (2014) ("Although the general provision set forth in Norma's Will still has effect, the scope of its operation is . . . limited to the extent that it would govern disposition of Norma's shares of Capitol Foundry stock, which is instead governed by the more specific provision set forth in the Shareholders' Agreement.")[10]; *Condo. Servs. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 281 Va. 561, 573 (2011) (where two statutory provisions conflict, "a specific provision of a contract governs over one that is more general in nature").

This Court reviews the circuit court's decision to dismiss without prejudice for an abuse of discretion. *Primov v. Serco*, 296 Va. 59, 66 (2018).[11] I agree with the majority that an error of law is definitionally an abuse of discretion. *Supra* at p. 5 (quoting *Coffman v. Commonwealth*, 67 Va. App. 163, 166 (2017)). But this measure of an abuse of discretion applies more appropriately in a different context. *Coffman* reviewed a circuit court's admission of evidence in a criminal case. More applicable is the standard set forth in contract interpretation cases:

> There are three primary ways a court can abuse its discretion: [1] when a relevant factor that should have been given significant weight is not considered; [2] when an irrelevant or improper factor is considered and given significant weight; and [3] when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a *clear error of judgment*.

---

[10] *Jimenez* may be further distinguished by the fact that it dealt not just with two conflicting contract provisions, but two separate conflicting contracts—a will and a shareholders' agreement. *Id.*

[11] The majority contends that I am incorrectly deferring to the circuit court's reading of the W.D.A. *See supra* p. 6 n.4. I am not. I find, on de novo review, that the circuit court read the W.D.A. correctly. I merely emphasize that this Court defers to the circuit court's decision to dismiss without prejudice. Given the totality of factors at work here—and given the circuit court's correct reading of the W.D.A.—the circuit court did not commit an error of judgment requiring reversal.

*Primov*, 296 Va. at 68 (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). Given the plausible multiple readings of this contract, the circuit court did not commit reversible error by reading the W.D.A. differently from today's majority and thus declining to dismiss with prejudice.

Indeed, *Primov* tells us that dismissal *without prejudice* is typically the appropriate outcome. *Id.* at 71 ("[A] dismissal without prejudice . . . would be the most suitable remed[y] for noncompliance with a contractual condition precedent for filing a lawsuit, provided such [a] remed[y] do[es] not unfairly prejudice the opposing party."). It only upheld a dismissal *with* prejudice because, there, the plaintiff nonsuited an action after getting two bites of the apple in court, after failing to comply with a contractual requirement that he seek mediation before bringing the claim to court. *See id.* ("In giving the opportunity to correct the noncompliance, the court is not simply giving the litigant another opportunity for reargument of the question already decided, but rather an opportunity to have the case decided on the merits.").

Thus, the circuit court followed the usual practice of dismissing Covanta's claim without prejudice. The circuit court read the contract provisions harmoniously with each other and declined appellants' invitation to the most drastic result—forfeiture. I would hold, therefore, that the circuit court properly exercised its discretion in not dismissing this case with prejudice.